UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD ALBERT STENBERG,

      Plaintiff,

v.

CORIZON HEALTH, INC., *et al.*,

      Defendants.

Case No. 20-cv-10674
Hon. Matthew F. Leitman

_____/

## ORDER GRANTING IN PART, DENYING IN PART, AND TERMINATING WITHOUT PREJUDICE IN PART DEFENDANTS' MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 77, 84, 85, 87, AND 88)

Plaintiff Edward Albert Stenberg is a state prisoner in the custody of the Michigan Department of Corrections (the "MDOC"). In this action, Stenberg alleges that he received constitutionally inadequate medical care while incarcerated at two MDOC facilities: the Woodland Center Correctional Facility ("WCC") and the Charles Egeler Reception and Guidance Center ("RGC"). (*See* Am. Compl., ECF No. 74.) He has named as Defendants (1) Corizon Health, Inc. ("Corizon"), a medical care company that contracted with the MDOC to provide medical care to its inmates and (2) certain Corizon and MDOC employees. (*See id.*)

Several Defendants have now filed motions to dismiss and/or for summary judgment. (*See* Mots., ECF Nos. 77, 84, 85, 87, and 88.) The Court held a hearing

1

on the motions on October 21, 2021.  For the reasons explained below, the motions are **GRANTED** in part, **DENIED** in part, and **TERMINATED** without prejudice in part.

## I

Stenberg filed this action *pro se* on March 12, 2020. (*See* Compl., ECF No. 1.)  On June 25, 2020, the Court appointed attorney Michael R. Turco to represent Stenberg. (*See* Orders, ECF Nos. 16, 17.)   Turco filed a Verified Amended Complaint on Stenberg's behalf on March 3, 2021. (*See* Am. Compl., ECF No. 74.)

In the Verified Amended Complaint, Stenberg alleges that the Defendants violated "his Constitutional rights to receive medical care and right to protections against cruel and unusual punishment." (*Id.*, PageID.640.)   Stenberg brings his claims against the following Defendants:

- Registered nurse Erica Herman;

- Dr. Gregory Fuller;

- Nurse Tonia Lawson;

- Corizon and Corizon employees Dr. Ankiet Tran, nurse practitioner Tana Hill, and Matthew Kasper (collectively, the "Corizon Defendants"); and

- MDOC employees Dr. Jeffery Stieve, Jeremy/Jeb Bush[1], Jodi DeAngelo, Lori Poirier, Daniel Howe, Richard Harbaugh, Paul Schrieber, Nathan Neusbaum, Halee Jordan, Van Brown, and Dr. Mark Cooks (collectively, the "MDOC Defendants").

---

[1] Defendant Bush is alternatively referred to in the Verified Amended Complaint as both "Jeremy Bush" and "Jeb Bush."

All of Defendants except for Lawson have now each moved to dismiss Stenberg's claims and/or for summary judgment. The motions pending before the Court are as follows:

- Herman's motion for summary judgment (ECF No. 88);

- Dr. Fuller's motion for summary judgment (ECF No. 87);

- The Corizon Defendants' motion for summary judgment (ECF No. 77);

- The MDOC Defendants' motion for summary judgment (ECF No. 85); and

- The MDOC Defendants' motion to dismiss (ECF No. 84).

The Court will address each motion – and the facts related to each motion – individually below.

## II

## A

The MDOC Defendants have moved to dismiss Stenberg's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id.* When assessing the sufficiency of a plaintiff's claim, a district

3

court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). Mere "conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B

All Defendants other than Lawson have also moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. A movant is entitled to summary judgment under that rule when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252.

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52.

Finally, where, as here, a plaintiff has filed a verified complaint, the plaintiff's allegations "carr[y] the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

### III

Before the Court turns to the individual motions to dismiss and/or for summary judgment, it pauses to describe the background law relevant to Stenberg's claims and several of the defenses raised in the motions.

### A

Stenberg brings his claims against the Defendants under 42 U.S.C. § 1983. "To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010)). "The principle is well settled that private medical professionals who provide healthcare services to inmates […] qualify as government officials acting under the color of state law for the purposes of § 1983." *Id.* (quoting *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008)). In addition, a plaintiff's "allegations must demonstrate

that each defendant [], through his or her own individual actions, *personally* violated [the] plaintiff's rights." *Johnson v. Mosley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original).

## B

In the Verified Amended Complaint, Stenberg alleges that the Defendants violated his constitutional right to medical care while incarcerated. "The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cty., Ky.*, 975 F.3d 554, 566 (6th Cir. 2020). *See also Estelle v. Gamble,* 429 U.S. 97, 104 (1976). This obligation arises under the Eighth Amendment to the United States Constitution, which "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle,* 429 U.S. at 104).

An Eighth Amendment claim "has two components, one objective and one subjective." *Rouster v. County of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). The contours of those components are well-established.

"The objective component requires the existence of a 'sufficiently serious' medical need." *Jones,* 625 F.3d at 941 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This type of need includes one "that has been diagnosed by a physician

as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation omitted).

"The subjective element requires 'an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Blackmore,* 390 F.3d at 895)*.* "Officials have a sufficiently culpable state of mind where officials act with 'deliberate indifference' to a serious medical need." *Id.* (quoting *Farmer*, 511 U.S. at 834). "Under this standard, 'the plaintiff must show that each defendant acted with a mental state 'equivalent to criminal recklessness.'" *Griffith*, 975 F.3d at 568 (quoting *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018)). "This showing requires proof that each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Id.* (quoting *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001)).

"[C]ourts are generally reluctant to second guess the medical judgment of prison medical officials." *Jones,* 625 F.3d at 944. As the Sixth Circuit has explained, "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment," federal courts hesitate to review "medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw,* 358 F.3d 377, 385 (6th Cir. 2004); *see also*

*Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Groce v. Correctional Medical Svcs., Inc.*, 400 F. App'x 986, 986, 988 (6th Cir. 2010) (affirming district court holding that "treatment at issue amounted, at most, to medical malpractice rather than the sort of deliberate indifference needed to establish a constitutional claim" and noting that "[o]rdinary medical malpractice does not satisfy the subjective component" of a deliberate indifference claim). "However, the Sixth Circuit has also recognized that [p]rison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment. Indeed, deliberate indifference may be established in cases where it can be shown that a defendant rendered grossly inadequate care or made a decision to take an easier but less efficacious course of treatment." *Jones*, 625 F.3d at 944-45 (internal punctuation omitted).

## C

Nearly all of the Defendants have moved for summary judgment on the basis that Stenberg failed to exhaust his claims against them through the MDOC's administrative grievance procedure. Under the Prison Litigation Reform Act (the "PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as

are available are exhausted." 42 U.S.C. § 1997e(a). "Failure to exhaust [under the PLRA] is an affirmative defense." *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019). Thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, "defendants [bear] the burden of proof on exhaustion." *Sules v. Anderson*, 678 F.3d 452, 455 (6th Cir. 2012); *see also id.* at 456 ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies").

The PLRA requires exhaustion in order to "allow[ ] prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court ... and to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204. Exhaustion "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006) (quotations omitted). Thus, a prison's requirements, not the PLRA, "define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In this case, the "prison's requirements" applicable to Stenberg's grievances are described in MDOC Policy Directive 03.02.130. (*See* Policy Directive, ECF No. 85-2.) That directive requires, among other things, that:

- A grievance may be "rejected" if it is "filed in an untimely manner";

- "Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after

becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff."; and

- The "[d]ates, times, places, and names of all those involved in the issue being grieved [must] be included" in any grievance.

(*Id.*, PageID.1136, 1138.)

### D

Finally, several of the MDOC Defendants have moved to dismiss Stenberg's claims against them on the basis of qualified immunity. "Qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Once raised, the "plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019).

"To survive [a] motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 898 (6th Cir. 2019) (internal quotation marks omitted). "The test is whether, reading the complaint in the light most favorable to

the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Id.* at 899.

## IV

The Court now turns to the particular motions filed by the Defendants. It begins with Defendant Herman's motion for summary judgment. (*See* Herman Mot., ECF No. 88.) For the reasons explained below, that motion is **DENIED**.

## A

Herman is a registered nurse who at all relevant times was "assigned to the Dwayne Waters Health Center" (the "DWHC"). (Am. Compl. at ¶17, ECF No. 74, PageID.644.) The DWHC is a health care facility located within the RGC where Stenberg received medical treatment. (*See id.* at ¶6, PageID.641.)

In the Verified Amended Complaint, Stenberg alleges that Herman acted with deliberate indifference toward his serious medical needs when she refused to bring him his medications that a physician had prescribed to him. (*See id.* at ¶¶ 91(g), 136, PageID.664, 677.) In particular, Stenberg claims that:

> RN Herman denied [him] medical care when she would not give [him] his pain medication. The medication nurses had missed [Stenberg's] meds several times that day and [Stenberg] asked RN Herman to bring him his pain medication that he had been requesting for hours. As Shift RN Nurse Herman could go get the medications and give them to [Stenberg] but she refused to do so causing [him] to go longer without his meds. When [Stenberg] asked for a supervisor, as he was entitled to, she also refused to call the supervisor.

(*Id.* at ¶116, PageID.670-671.)

11

**B**

Herman moves for summary judgment on two grounds: (1) she was not deliberately indifferent to Stenberg's serious medical needs and (2) Stenberg has not exhausted his claim against her. Herman has not moved for summary judgment on any other basis, including qualified immunity. The Court will explore each of her arguments separately. Neither of her arguments persuades the Court that she is entitled to summary judgment at this time.

**1**

Herman first argues that Stenberg "can prove no set of facts that [she] was deliberately indifferent to [his] serious medical needs." (Herman Mot., ECF No. 88, PageID.1574.) More specifically, she asserts that Stenberg cannot satisfy either the objective or subjective component of his deliberate indifference claim against her. (*See id.*, PageID.1576-1579.) The Court disagrees.

With respect to the objective component, Herman asserts that Stenberg has "present[ed] no evidence to support the notion that [she] refused [his] request [for medications] or had any responsibility to retrieve medications that were not purportedly provided by prior nursing staff members." (*Id.*, PageID.1577.) But whether Herman did or did not refuse Stenberg's request for his prescribed pain medications is not relevant to the *objective* component of Stenberg's deliberate indifference claim. As explained above, "[t]he objective component requires the

existence of a 'sufficiently serious' medical need," such as a medical condition "that has been diagnosed by a physician as mandating treatment." *Jones,* 625 F.3d at 941. Stenberg easily satisfies that component here.  He swears in his Verified Amended Complaint that he has been diagnosed with, among other things, hepatic encephalopathy (a form of liver disease), herniated discs in his neck and spine, Parkinson's disease, abnormal blood ammonia levels, and an enlarged spleen. (*See*, *e.g.*, Am. Compl. at ¶¶ 76-77, 92, 158, ECF No. 74, PageID.659, 665, 683.)  His conditions are so serious that he has been repeatedly prescribed powerful "narcotic pain pills" while incarcerated such as Oxycodone and Oxycontin in order to treat his constant pain. (*Id.* at ¶¶ 95, 98, 100, PageID.666-667.)  There can be no serious dispute that Stenberg has shown that he suffers from several serious, diagnosed medical conditions.

Moreover (and in any event), Stenberg *has* presented evidence to support the notion that Nurse Herman refused to provide him his prescribed pain medications. More specifically, he swears in his Verified Amended Complaint that Herman knew he had not received his prescribed pain medications, that she ignored his requests for his missing doses, and that she refused his request to speak to a supervisor. (*See* Am. Compl. at ¶116, ECF No. 74, PageID.670-671.)  Thus, at this point, there is at least a question of fact regarding whether Herman did or did not refuse to provide Stenberg his prescribed medications.

Herman also argues that Stenberg has not satisfied the subjective component of his deliberate in difference claim.  Herman says that Stenberg "has failed to demonstrate how [her] actions/inactions subjected [him] to a substantial risk of serious harm." (Herman Mot., ECF No. 88, PageID.1578.)  She further asserts that Stenberg "failed to demonstrate that [she] consciously exposed [him] to an excessive risk of serious harm." (*Id*.)  But, as the Sixth Circuit has explained, the "[f]ailure by a jail medical staff to adhere to a prescribed course of treatment may satisfy the subjective component of an Eighth Amendment violation." *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018).  And here, Stenberg has presented evidence – through the allegations in his Verified Amended Complaint – that Herman (1) "had the responsibility to bring [Stenberg his] medications per [his] doctor's orders," (2) was told by Stenberg that he had been requesting his missing prescribed pain medications "for hours," (3) refused to bring Stenberg those prescribed medications, and (4) refused to call for a supervisor upon Stenberg's request. (Am. Compl. at ¶¶ 91(g), 114, ECF No. 74, PageID.664, 670-671.)  Thus, when the evidence is viewed in the light most favorable to Stenberg, he has shown that Herman failed to "adhere to a prescribed course of treatment." *Richmond*, 885 F.3d at 939.

Herman counters that "at most, [Stenberg] has alleged a disagreement with [her] medical judgment," and she insists that "[w]hether or not [her] medical judgment was proper is a question of negligence, and not of deliberate indifference."

(Herman Mot., ECF No. 88, PageID.1579, citing *Griffith*, 975 F.3d at 568.)   But Stenberg is not questioning Herman's medical judgment.   He does not allege in his Verified Amended Complaint that he asked her for pain medications and that she determined, in her *medical judgment*, that he should not receive those medications. Instead, Stenberg says that Herman (1) knowingly failed to follow the instructions of his physician who prescribed him certain pain medications and (2) refused to allow him to see a supervisor when he complained about not receiving his prescribed medications.   Under these circumstances, Stenberg has not alleged a disagreement with Herman's medical judgment.

For all of these reasons, the Court cannot say as a matter of law that Stenberg has failed to satisfy the subjective component of his deliberate indifference claim against Herman.[2]

## 2

Next, Herman argues that she is entitled to summary judgment because Stenberg failed to exhaust his administrative remedies against her. (*See* Herman Mot., ECF No. 88, PageID.1579-1580.)   Herman insists that Stenberg "has [] failed to provide any proof that a grievance against [her] was filed and denied, or that any appeal was properly pursued thereafter." (*Id.*)   But Herman has the burden exactly

---

[2] Herman may explore this portion of Stenberg's claim during discovery, and the Court will allow her to file a second summary judgment motion following discovery if she believes that such a motion is appropriate at that time.

backwards.  As explained above, "[f]ailure to exhaust is an affirmative defense." *Does 8-10*, 945 F.3d at 961.  Thus, Herman, *not* Stenberg, "bear[s] the burden of proof on exhaustion." *Id.*  And in her motion, Herman has not provided any affirmative evidence that Stenberg failed to exhaust his claim against her.  Herman is therefore not entitled to summary judgment on this basis.

In Herman's reply brief, for the first time, she presents evidence that Stenberg failed to properly exhaust his claims against her. (*See* Herman Reply Br., ECF No. 104, PageID.2173.)   She argues that (1) "proper exhaustion of an inmate's administrative remedies demands completion of the prison's administrative review process, including all levels thereof, in accordance with the deadlines and other critical procedural rules" (*id.*, citing *Jones*, 549 F.3d at 204), and (2) Stenberg failed to exhaust the grievance he filed arising out of Herman's failure to provide him medications – Grievance RGC 19-08-1635-28E – because he failed to timely file a Step II appeal during the grievance process. (*Id.*, citing Grievance RGC 19-08-1635-28E, ECF No. 93-2, PageID.1623.)

Herman is not entitled to summary judgment based on this ground for two reasons.  First, in general, a defendant's "presentation of new arguments and new evidence in [a] reply brief violate[s] [the plaintiff's] right under Fed.R.Civ.P. 56(c) to notice and a reasonable opportunity to respond to [defendant's] summary judgment motion and supporting evidence." *Engineering & Mfg. Services, LLC v.*

*Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010).  The Court therefore considers the argument and evidence waived for purposes of resolving this motion. *See*, *e.g.*, *Scottsdale Ins. Co. v. Flowers*, 415 F.3d 456, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived") (emphasis in original; internal citation omitted).

Second, and in any event, on this record, there is at least a question of fact as to whether Stenberg sufficiently exhausted his claim against Herman.  While a prisoner must normally exhaust his claims through the prison grievance process, there are some limited "exceptions to this strict rule." *Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014).  For example, the Sixth Circuit has "excused a prisoner's lack of complete compliance when the improper actions of prison officials render the administrative remedies functionally unavailable." *Id.* *See also Ross v. Blake*, 578 U.S. 632, 635, 644 (2016) (holding that "[a] prisoner need not exhaust remedies if they are not 'available,'" and explaining that "interference with an inmate's pursuit of relief renders the administrative process unavailable").

17

Here, Stenberg has presented some evidence that the grievance process was not available with respect to the grievance he filed against Herman. Stenberg says that (1) he could not timely file his Step II appeal because the MDOC did not provide him his Step II appeal form until *after* the deadline to file that appeal had expired and (2) he returned the appeal form the same day that he finally received it. (*See* Grievance RGC 19-08-1635-28E, ECF No. 93-2, PageID.1623, in which Stenberg writes that he received the Step II appeal form after the deadline to appeal had expired and he "returned" it on the "same day" that he received it). He therefore insists that the MDOC made it impossible for him to timely file his Step II appeal. Prior to discovery, and on this limited record, the Court is not persuaded that as a matter of law, the grievance process was available to Stenberg. Herman may conduct discovery with respect to Stenberg's attempt to exhaust his grievance against her and may file a second summary judgment motion following discovery if appropriate.

### 3

For all of the reasons stated above, Herman's motion for summary judgment is **DENIED**. The Court **GRANTS** Herman leave to file a second summary judgment motion at the conclusion of discovery.

18

**V**

The Court next turns to Dr. Fuller's motion for summary judgment. (*See* Dr. Fuller Mot., ECF No, 87.)  For the reasons explained below, that motion is **DENIED**.

**A**

At all relevant times, Dr. Fuller was the medical director of the "Choices" hospice program at the DWHC and WCC. (*See* Am. Compl. at ¶14, ECF No. 74, PageID.644.)  "One of the stated goals of [the Choices] program is to help ease the pain of the palliative care and hospice patients" enrolled in the program. (*Id.* at ¶91(c), PageID.664.)  Stenberg was a patient who received treatment through the Choices program. (*See id.* at ¶96, PageID.666.)

In the Verified Amended Complaint, Stenberg alleges that Dr. Fuller initially prescribed him powerful pain medications such as Oxycodone and Oxycontin in an effort to treat his significant pain. (*See id.* at ¶¶ 97, 100, PageID.666-667.)  But Stenberg says that after he lodged "numerous complaints regarding his pain … Dr. Fuller ordered [the medical staff] to stop all [of Stenberg's] pain medication." (*Id.* at ¶¶ 118, 120, PageID.672.)  And while another doctor at the WCC "eventually" prescribed Stenberg "a different type of pain medication," it was "in a lower dosage than before" and did not alleviate his pain. (*Id.* at ¶121, PageID.672.)

19

**B**

Dr. Fuller moves for summary judgment on two grounds: (1) Stenberg has not exhausted his claim against him, and (2) even if the claim is exhausted, he (Dr. Fuller) was not deliberately indifferent to Stenberg's serious medical needs. (*See* Dr. Fuller Mot., ECF No. 87.)  Dr. Fuller has not moved for summary judgment on the basis of qualified immunity or any other basis.  The Court will explore each of his arguments separately.  Neither of them persuades the Court that he is entitled to summary judgment at this time.

**1**

Dr. Fuller first argues that Stenberg "failed to exhaust all of his administrative remedies prior to filing this lawsuit." (*Id.*, PageID.1450.)  He asserts that MDOC Policy Directive 03.02.130 (quoted above) requires a prisoner to "attempt to resolve the issues [identified in a grievance] with the staff member involved" before submitting a grievance, and he says that Stenberg "has not established that he attempted to address his grievance with [him] prior to filing [that] grievance." (*Id.*)  He further argues that "nothing in the Complaint or the attachments to it suggests [Stenberg's] compliance with that process," and he contends that Stenberg "has failed to produce the MDOC's decision relating to this grievance, or any other documentation that demonstrates [Stenberg's] completed the three steps" of the grievance process. (*Id.*)

20

But as the Court explained in detail above, because failure-to-exhaust is an affirmative defense, it was *Dr. Fuller's* burden to show that the claim was unexhausted. *See Does 8-10*, 945 F.3d at 961.  Indeed, contrary to Dr. Fuller's argument, Stenberg was "not required to specially plead or demonstrate exhaustion in [his] complaint[]." *Jones*, 549 U.S. at 216.  And here, Dr. Fuller has not made any effort to analyze the particular grievance at issue with respect to exhaustion, nor has he presented any affirmative evidence to support his contention that Stenberg failed to exhaust his administrative remedies.  Thus, because Dr. Fuller wrongly places the burden to prove exhaustion on Stenberg, he is not entitled to summary judgment on the basis of exhaustion.

## 2

Dr. Fuller next argues that even if Stenberg did exhaust his claim, he (Dr. Fuller) is still entitled to summary judgment because Stenberg has not established that he (Dr. Fuller) was deliberately indifferent to Stenberg's serious medical needs. (*See* Dr. Fuller Mot., ECF No. 87, PageID,1451-1460.)  According to Dr. Fuller, he did not "suddenly 'end' [Stenberg's] medications without regard to [Stenberg's] wellbeing." (*Id.*, PageID.1459.)  He instead says that "the records reflect [his] careful considerations of [Stenberg's] symptoms and conditions with other members of the Choices Panel." (*Id.*)  He further insists that Stenberg's medications were "tapered

down," not stopped all at once, "and an additional medication was prescribed to help [Stenberg] with withdraw." (*Id.*, PageID.1460.)

But Stenberg tells a far different story – one that does not involve a careful and gradual tapering down of his pain medications or an exercise of medical judgment. As described above, Stenberg swears in his Verified Amended Complaint that Dr. Fuller ordered that "all of" his (Stenberg's) pain medications be "stopped" in their entirety, cold turkey, after Stenberg lodged "[n]umerous complaints concerning his pain [and] the nurses not administering his pain medication when requested." (Am. Compl. at ¶¶ 118, 120, ECF No. 74, PageID.672.) If a jury credited that evidence, it could reasonably conclude that Dr. Fuller knew that Stenberg was in such severe pain that he needed several powerful prescribed pain medications to address that pain, but Dr. Fuller nonetheless chose to stop Stenberg's pain medications all at once because Stenberg was complaining about his course of treatment.

Given these competing versions of events, the Court cannot conclude as a matter of law that Dr. Fuller was not deliberately indifferent to Stenberg's serious medical needs. The parties may explore Dr. Fuller's treatment of Stenberg during discovery, and, if appropriate, Dr. Fuller may file a second summary judgment motion at the close of discovery.

**3**

For all of the reasons stated above, Dr. Fuller's motion for summary judgment is **DENIED**. The Court **GRANTS** Dr. Fuller leave to file a second summary judgment motion at the conclusion of discovery.

**VI**

The Court now turns to the Corizon Defendants' motion for summary judgment. (*See* Corizon Defs.' Mot., ECF No. 77.) For the reasons explained below, the motion is **GRANTED** with respect to the claim Stenberg brings in Count IV of the Verified Amended Complaint but **DENIED** with respect to Stenberg's claims in Counts II and III.

**A**

Stenberg brings claims against the Corizon Defendants in Counts II, III, and IV of the Verified Amended Complaint. (*See* Am. Compl. at ¶¶ 67 – 167, PageID.657-685.) In Count II, Stenberg says that Corizon doctors "failed to treat [him]" despite his serious and diagnosed medical conditions. (*Id.* at ¶67(E), PageID.658.) In Count III, Stenberg claims that each of the Corizon Defendants denied him "care and pain medication as scheduled" and "stopped administering pain medication to [him] for no just reason." (*Id.* at ¶91, PageID.663.) More specifically, he alleges that:

- Defendant Hill "was responsible" for his medical care, threatened to withhold his pain medications "if he kept complaining," and told Stenberg "[c]an't you

get it through your thick head – YOU ARE DYING – there is nothing more we can do for you";

- Defendant Dr. Tran "continuously denied [him] medical care when [it was] urgently requested" and "denied [Stenberg] effective pain management";

- Defendant Kasper "denied [Stenberg] pain medication because 'he writes grievances'"; and

- Corizon would "not allow[]" its doctors and employees to provide "the proper diagnostics or care" to him.

(*Id.* at ¶¶ 91(D), (J), and (L), and 98, PageID.664-666.)   Finally, in Count IV, Stenberg says that Corizon refused to approve the forms required for him to have necessary surgery to address his cataract diagnosis. (*See id.* at ¶¶ 143(C), 161, PageID.679-680, 684.)

## B

The Corizon Defendants have moved for summary judgment on only one basis: that Stenberg has failed to exhaust his administrative remedies against them. (*See* Corizon Defs.' Mot., ECF No. 77.)  They rely on the provision of MDOC Policy Directive 03.02.130 quoted above that "specifically requires [] inmate grievances [to] contain," among other things, the "names of all those involved in the issues being grieved. (*Id.*, PageID.859, citing MDOC Policy Directive 03.02.130.)  They insist that Stenberg "did not file <u>any</u> grievances naming [the Corizon Defendants]." (*Id.*, emphasis in original.)  In support of their contention, the Corizon Defendants provided the Court a chart listing eleven different grievances that Stenberg had filed. (*See id.*, PageID.856-857.)  In the chart, the Corizon Defendants explained why each

grievance had been rejected, and the Corizon Defendants maintained that Stenberg had "failed to name any [of the] Corizon Defendants in any of the grievances" listed on the provided chart. (*Id.*, PageID.857.)

The problem for the Corizon Defendants with respect to the claims Stenberg raised in Counts II and III of the Verified Amended Complaint is that there is a disconnect between the grievances that they analyzed in their motion and the grievances that Stenberg identified in those Counts as exhausting his claims against them. In an exhibit to the Verified Amended Complaint, Stenberg included a list of grievances titled "Summary of Grievances Filed Sorted by Claim." (Am. Compl., ECF No. 74, PageID.696.) In that exhibit, Stenberg identified the grievances relevant to each claim in his Verified Amended Complaint.[3] (*See id.*) As to Counts II and III, Stenberg identified eight relevant grievances. (*See id.*) But in the chart that the Corizon Defendants included in their motion, they listed only one of the grievances identified as relevant by Stenberg: Grievance WCC-19-10-0526-12C3, a grievance that arose out of the alleged denial of medical care. The Corizon Defendants did not address in their motion, in any way, the other seven grievances that Stenberg specifically identified in his Verified Amended Complaint as exhausting his claims in Counts II and III. The Corizon Defendants have therefore

---

[3] Stenberg has since confirmed that this exhibit is a "complete and accurate" list of the relevant grievances. (Stenberg Supp. Br., ECF No. 116, PageID.2293.)

not carried their burden to establish that they are entitled to summary judgment on their failure-to-exhaust defense with respect to Counts II and III.

The Court acknowledges that the Corizon Defendants did address six of the remaining seven identified grievances related to Counts II and III for the first time in their reply brief (*see* Corizon Reply Br., ECF No. 100), but that does not entitle the Corizon Defendants to summary judgment on those Counts for several reasons. First, for the reasons explained above, the Court will not consider exhaustion arguments raised for the first time in reply briefs. Stenberg did not have an opportunity to respond to those arguments in his written papers, and it would be prejudicial to allow the Corizon Defendants to rely on those arguments now. Second, the Corizon Defendants still have not addressed all of the relevant grievances identified in Stenberg's Verified Amended Complaint. More specifically, the Corizon Defendants have not addressed Grievance RGC-19-08-1633-28C in either their motion or reply brief. Finally, the Corizon Defendants' descriptions of the reasons some of the grievances were rejected do not appear to match the reasons provided by the MDOC. For instance, the Corizon Defendants note in their reply brief that "Grievance RGC-19-08-1635-28E [] for failure to administer [Stenberg's] pain medications pursuant to [doctor's] orders[] was not discussed with the Corizon Defendants and was rejected. Thus, this grievance does not exhaust any of the allegations in the Amended Complaint." (*Id.*, PageID.2141.)

The Corizon Defendants therefore seem to imply that this grievance was rejected *because* Stenberg had "not discussed [it] with the Corizon Defendants." But that is not why the MDOC rejected the grievance. It rejected the grievance at Step II because it was untimely. (*See* Grievance RGC-19-08-1635-28E, ECF No. 114-1, PageID.2344.) In the absence of full briefing that addresses each of the grievances Stenberg identified in his Verified Amended Complaint on an individual basis, the Court is not yet prepared to hold as matter of law that the Corizon Defendants are entitled to summary judgment on their failure-to-exhaust defense on Counts II and III of the Verified Amended Complaint.

The Court does conclude that Corizon is entitled to summary judgment on its failure-to-exhaust defense with respect to the claim brought in Count IV. As discussed above, that claim arises out of the denial of cataract surgery for Stenberg, and the claim is brought only against Corizon (the corporate entity) and not against any individual Corizon employee. The Corizon Defendants note that Stenberg identified only one grievance as exhausting that claim – Grievance WCC-19-09-0441-28E. They contend that that grievance did not exhaust the claim against Corizon because it did not name Corizon, and thus it failed to satisfy the MDOC's requirement in Policy Directive 03.02.130 that a grievance "name[] all those involved in the issue being grieved." (Policy Directive, ECF No. 85-2, PageID.1138.) The Court agrees. *See Jones*, 549 U.S. at 218 (explaining that in

27

order to properly exhaust a claim, an inmate must comply "with prison grievance procedures").

Stenberg counters argues that "[a] court may excuse a prisoner's failure to name a particular defendant in his grievance when it is obvious from the facts alleged that the defendant was involved" and where a defendant "receive[s] fair notice [of a claim] even [if] they were not personally named in a grievance." (Stenberg Supp. Br., ECF No. 116, PageID.2294-2295, citing *Calhoun v. Hill*, 2008 WL 4277171 (E.D. Mich. Sept. 17, 2008), *Binion v. Glover*, 2008 WL 4097407 (E.D. Mich. Aug. 29, 2008), and *Lyles v. Papendick*, 2020 WL 5557649 (E.D. Mich. Sept. 17, 2020).) And he insists that even though he did not specifically name Corizon in Grievance WCC-19-09-0441-28E, it would have been obvious that he was raising concerns about Corizon's conduct. The Court disagrees. Nothing in the grievance identified by Stenberg makes it obvious that he was raising complaints about the corporate entity Corizon. On the contrary, the text of the grievance indicates that he intended to complain about an *individual*. Indeed, Stenberg insisted that he "want[ed] to know who is denying [his surgery] and […] appeal *this unknown person's* erroneous decision." (Grievance WCC-19-09-0441-28E, ECF No. 116-1, PageID.2372; emphasis added.) Simply put, Corizon, the corporate entity, would not have been

on "fair notice" that Stenberg was attempting to exhaust a claim against it.[4]  Stenberg

has therefore failed to exhaust his claim against Corizon in Count IV.

## C

For all of the reasons stated above, the Corizon Defendants' motion for

summary judgment is **GRANTED** with respect to Count IV but **DENIED** with

respect to Counts II and III.  The Court **GRANTS** the Corizon Defendants leave to

file a second summary judgment motion at the conclusion of discovery.  If the

Corizon Defendants raise a failure-to-exhaust defense in that motion, they shall

specifically address each grievance identified by Stenberg in his "Summary of

Grievances Filed Sorted by Claim" chart as relevant to Counts II and III of the

Verified Amended Complaint. (*See* Am. Compl., ECF No. 74, PageID.696.)

## VII

The Court next addresses the MDOC Defendants' motion for summary

judgment (ECF No. 85) and motion to dismiss (ECF No. 84).  In the motion for

summary judgment, the MDOC Defendants (with the exception of Dr. Cooks and

Howe) argue that Stenberg has failed to exhaust his claims prior to filing this action.

(*See* MDOC Defs.' Mot., ECF No. 85.)  In the motion to dismiss, the MDOC

Defendants argue, among other things, that (1) Stenberg has not "adequately

---

[4] Even if the unknown person who is the subject of the grievance was a Corizon
employee, it would not have been obvious from the grievance that Stenberg meant
to complain more broadly about Corizon.

alleg[ed] the personal involvement" of most of the MDOC Defendants "in a constitutional violation," (2) to the limited extent that Stenberg does adequately plead the personal involvement of some of the MDOC Defendants, "those allegations are not sufficient to state a claim for deliberate indifference," and (3) all of the MDOC Defendants are entitled to qualified immunity. (MDOC Defs.' Mot., ECF No. 84, PageID.1060.)

The Court will address the MDOC Defendants' arguments on a claim-by-claim, and Defendant-by-Defendant, basis below.

## A

The MDOC Defendants first argue that to the extent that Stenberg has brought claims against them in their official capacities for money damages, those claims are subject to dismissal based on the doctrine of sovereign immunity. (*See* MDOC Defs.' Mot., ECF No. 84, PageID.1073-1074.)   The Court agrees.   The Eleventh Amendment bars civil rights actions against a state and its agencies unless the state has waived its immunity and consented to suit or Congress has abrogated that immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 71 (1989). And "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State." *Id. See also Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009).  Moreover, "[i]t is well established that § 1983 does not abrogate the

Eleventh Amendment, and that Michigan has not consented to the filing of civil rights suits against it in federal court." *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (internal citations omitted).  Accordingly, to the extent that the MDOC Defendants are sued in their official capacities for money damages, they are entitled to sovereign immunity under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Williams*, 369 F. App'x 646, 653 (6th Cir. 2010) (affirming dismissal of claims brought against MDOC employees in their official capacity based on sovereign immunity).  The Court therefore **DISMISSES** Stenberg's official-capacity claims against the MDOC Defendants.

B

The Court now turns to the individual-capacity claims brought against the MDOC Defendants in the Verified Amended Complaint.  It begins with Count I.  In that Count, Stenberg alleges that the MDOC lost his dentures in late 2017 and refused to replace them. (*See* Am. Compl. at ¶¶ 25-56, ECF No. 74, PageID.647-656.)  The MDOC Defendants named in this Count are the following:

- Dr. Cooks.  Dr. Cooks was the MDOC dentist assigned to Stenberg's care at the WCC.  Stenberg alleges, among other things, that (1) Dr. Cooks initially presented him a set of dentures that were "set at an angle" and did not fit in his mouth, (2) Dr. Cooks then provided Stenberg a set of dentures that constantly "shift[ed] out of place" and prevented Stenberg from "open[ing] his mouth without the denture[s] falling out," and (3) after Stenberg continued to complain about the dentures, Dr. Cooks told Stenberg that he "did not care" that Stenberg did not have working dentures, "would not pursue his case any longer" and "was not going to make [Stenberg's] dentures." (*Id.* at ¶¶ 40-44, PageID.651-652; *see also* Stenberg Decl. at ¶7,

31

ECF No. 106-1, PageID.2189, in which Stenberg states that Dr. Cooks "refused to provide me with additional dental care after I refused to approve ill-fitting [dentures]" and that "no replacement dentures have ever been made.");

- Richard Harbaugh.  Harbaugh was the Health Unit Manager at the WCC at all relevant times.  Stenberg alleges that Harbaugh actively interfered with his attempts to receive new dentures by "erroneously" telling WCC administrative assistant Paul Schrieber "that the entire wait for dentures was caused by [Stenberg]." (Am. Compl. at ¶48, ECF No. 74, PageID.653.) Stenberg insists that Schrieber relied on this "inaccurate" and "misleading" information from Harbaugh when Schrieber decided not to schedule Stenberg to see a prosthodontist. (*Id.* at ¶¶ 50-51, 54, PageID.654-655.);

- Paul Schrieber.  Schrieber was an administrative assistant at the WCC during all relevant times.  Stenberg claims that Schrieber actively interfered with his efforts to receive new dentures and refused to schedule Stenberg for an appointment with a prosthodontist. (*See id.*); and

- Jodi DeAngelo.  DeAngelo was the warden at the WCC.  Stenberg says that he "wrote many letters" to DeAngelo about not receiving new dentures, but DeAngelo "would not listen to him" and took no action to ensure he received properly-fitting dentures. (*Id.* at ¶25(e), PageID.647).[5]

## 1

In their summary judgment motion, the MDOC Defendants argue that Stenberg failed to exhaust his claim in Count I against Defendants Harbaugh, Schrieber, and DeAngelo.[6] (*See* MDOC Defs.' Mot., ECF No. 85, PageID.1124-

---

[5] Stenberg also brought this claim against Jeremy/Jeb Bush, the warden at the RGC. (*See* Am. Compl. at ¶24(a), ECF No. 74, PageID.646.)  Stenberg has since agreed to dismiss his claims against Bush in this Count without prejudice. (*See* Stenberg Resp. to MDOC Defs.'Mot., ECF No. 95, PageID.1678.)

[6] The MDOC Defendants acknowledge that Stenberg has exhausted Count I of the Amended Complaint with respect to Dr. Cooks. (*See* MDOC Defs.' Mot., ECF No. 85, PageID.1124.)

1125.)  More specifically, they argue that in the relevant grievance – Grievance WCC 19-10-0515-12a2 – Stenberg only raised issues with respect to Dr. Cooks. Thus, with respect to Defendants Harbaugh, Schrieber, and DeAngelo, the MDOC Defendants insist that Stenberg failed to comply with the MDOC's requirement that Stenberg "name[] all those involved in the issue being grieved." (*Id.*, PageID.1125, quoting MDOC Policy Directive 03.02.130.)  The Court agrees.

The Court has carefully reviewed Grievance WCC 19-10-0515-12a2 and concludes that it raises concerns solely related to Dr. Cooks' performance. (*See* Grievance WCC 19-10-0515-12a2, ECF No. 116-1, PageID.2305.)  Indeed, Dr. Cooks is the only specific person identified in that grievance.  The grievance does not mention, or in any way call into question the conduct of, Defendants Harbaugh, Schrieber, or DeAngelo.  Therefore, because Stenberg failed to comply with the MDOC's grievance procedure with respect to Defendants Harbaugh, Schrieber, and DeAngelo, those Defendants are entitled to summary judgment on their failure-to-exhaust defense.

Stenberg counters that the MDOC Defendants have "cited no authority stating that a plaintiff may not sue a defendant over which it has standing just because it did not name the defendant in his grievance." (Stenberg Resp., ECF No. 98, PageID.1886.)  But the MDOC Defendants *have* cited authority that the PLRA requires a prisoner to exhaust his claims before filing suit, that exhaustion requires

full compliance with a prison's administrative grievance procedure, and that the appliable grievance procedure here required Stenberg to name all relevant individuals in his grievance. (*See* MDOC Defs.' Mot., ECF No. 85, PageID.1115-1118, citing *Jones*, 549 U.S. at 219.)   And Stenberg has not explained how he complied with that procedure here with respect to Defendants Harbaugh, Schrieber, or DeAngelo.

Stenberg further argues that even if he did not name Defendants Harbaugh, Schrieber, or DeAngelo in his grievance, he still exhausted his claims against them because it would have been "obvious" from the grievance that he was raising issues related to their conduct. (Stenberg Supp. Br., ECF No. 116, PageID.2294-2295, citing *Calhoun*, 2008 WL 4277171, *Binion*, 2008 WL 4097407, and *Lyles*, 2020 WL 5557649.)   The Court disagrees.   It is not "obvious" from Grievance WCC 19-10-0515-12a2 that Stenberg was raising any claims about the conduct of Defendants Harbaugh, Schrieber, or DeAngelo.   Therefore, because Grievance WCC 19-10-0515-12a2 would not place Defendants Harbaugh, Schrieber, or DeAngelo on "fair notice" that Stenberg was raising a claim arising out of their conduct, Stenberg failed to exhaust his claims against them.[7]

---

[7] In Stenberg's Verified Amended Complaint, he references a second grievance that he says is relevant to his dental claim: Grievance RGC-18-06-1000-19Z.  But that grievance was filed in May of 2018 while Stenberg was incarcerated at the RGC. (*See* ECF No. 116-1, PageID.2302.)  It therefore could not possibly have exhausted

For all of these reasons, summary judgment is **GRANTED** in favor of Defendants Harbaugh, Schrieber, and DeAngelo on Count I of Stenberg's Verified Amended Complaint.[8]  The only remaining portion of Count I is Stenberg's claim against Dr. Cooks.  The Court now turns to that claim.

### 2

The MDOC Defendants argue that the Court should dismiss the claim against Dr. Cooks in Count I on two grounds: (1) Stenberg's allegations "against [Dr. Cooks] do not satisfy the subjective component of an Eighth Amendment claim" (MDOC Defs.' Mot., ECF No. 84, PageID.1086), and (2) Dr. Cooks is entitled to qualified immunity. (*See id.*, PageID.1095-1096.)  The Court disagrees.

### a

The MDOC Defendants first argue that Dr. Cooks' conduct was "far from deliberate indifference." (*Id.*, PageID.1087.)  They say that while "[m]any inmates

---

any claims against Defendants Harbaugh, Schrieber, or DeAngelo, all of whom worked at the WCC and did not come into contact with Stenberg until 2019, well after Grievance RGC-18-06000-19Z was filed and resolved. (*See, e.g.*, Am. Compl. at ¶¶ 45-51, ECF No. 74, PageID.652-654, describing conduct in 2019.)

[8]  The MDOC Defendants have also moved to dismiss Count I of the Verified Amended Complaint on other grounds, including on the basis that Stenberg has failed to state viable claims against Defendants Harbaugh, Schrieber, and DeAngelo. (*See* MDOC Defs.' Mot., ECF No. 84.)  Because the Court is granting summary judgment in favor of Harbaugh, Schrieber, and DeAngelo on Count I, it need not consider the MDOC Defendants' other arguments with respect to that Count raised in the motion to dismiss.  The Court therefore **TERMINATES** those portions of the MDOC Defendants' motion to dismiss without prejudice.

arrive in a prison dental office having never received dental care in their life [… Dr. Cooks] offered [Stenberg] multiple sets of dentures that [Stenberg] was unhappy with and took time out of his schedule to make sure that [Stenberg] saw a specialist to attempt to give him the perfect-fitting dentures." (*Id.*, PageID.1088.)   They therefore insist that "[t]he allegations against [Dr. Cooks] merely show that he provided treatment to [Stenberg], which [Stenberg] was ultimately unhappy with." (*Id.*)

The MDOC's description of this claim is far different from the sworn version of events presented by Stenberg in the Verified Amended Complaint.  Stenberg does not merely allege that he was "unhappy" with the dentures presented by Dr. Cooks. Instead, he alleges that the dentures were so flawed that they would not stay in his mouth (thus, one could infer, preventing him from eating solid foods) and caused him severe pain.  More specifically, as explained above, Stenberg swears in his Verified Amended Complaint that (1) Dr. Cooks first presented him an "ill-fitting" wax impression that set his teeth on a "20-degree angle"; (2) at a second appointment, Dr. Cooks presented a new set of impressions that "did not fit well," were still "set at an angle," and prevented Stenberg from "open[ing] his mouth without the denture[s] falling out"; and (3) when Stenberg complained about the dentures, Dr. Cooks "visited [Stenberg] in his room," told Stenberg that he "did not care" about his lack of functioning dentures, and "inform[ed] him that [he] would

not pursue his case any longer." (Am. Compl. at ¶¶ 41-44, ECF No. 74, PageID.651-652.)  And Stenberg swears in the Verified Amended Complaint that Dr. Cooks' refusal to treat him and provide him functioning dentures left him in "non-stop pain." (*Id.* at ¶58, PageID.656.)

The Court acknowledges that Dr. Cooks did arrange for Stenberg to see a prosthodontist (*see* Am. Compl. at ¶40, ECF No. 74, PageID.651), and that such a referral could weigh against a finding that Dr. Cooks acted with deliberate indifference.  However, Dr. Cooks' referral to the prosthodontist does not entitle to Dr. Cooks to dismissal here.  Stenberg swears in the Verified Amended Complaint that his substantial problems with his dentures continued unabated even after he saw the prosthodontist, that he informed Dr. Cooks of the continuing problems, and that Dr. Cooks chose to do nothing about them.  In particular, Stenberg says that when he returned to Dr. Cooks' care after the appointment with the prosthodontist, Dr. Cooks presented him a set of impressions that "did not fit well," fit "far different from the ones that the prosthodontist had adjusted," and, most importantly, left him unable to "open his mouth without the denture falling out." (*Id.* at ¶42, PageID.651-652.)  Stenberg further insists that he never received a working set of dentures from Dr. Cooks following the appointment with the prosthodontist. (*See id.* at ¶44, PageID.652.)  Finally, as described above, Stenberg says that after the appointment with the prosthodontist, Dr. Cooks told him that he (Dr. Cooks) "*did not care*" that

Stenberg did not have working dentures and "would not pursue his case any longer." (*Id.; emphasis added.*)  Under these facts, Dr. Cooks' referral of Stenberg's case to a prosthodontist does not entitle Dr. Cooks to dismissal of the claim against him.

For all of these reasons, the Court declines to dismiss Stenberg's claim against Dr. Cooks on the ground that Stenberg has failed to sufficiently allege Dr. Cooks' deliberate indifference.

**b**

The Court next turns to the MDOC Defendants' argument that Dr. Cooks is entitled to qualified immunity.  The Court concludes that, on this record, Dr. Cooks is not entitled to qualified immunity.

The MDOC Defendants first argue that Stenberg has not sufficiently alleged that Dr. Cooks violated Stenberg's constitutionally protected rights because Stenberg "has not alleged facts that rise to the level of deliberate indifference." (MDOC Defs.' Mot., ECF No. 84, PageID.1095.)  The Court disagrees.  In cases of deliberate indifference, this element of the qualified immunity analysis "collapses into the analysis of … [whether the defendant was] deliberately indifferent to [the plaintiff's] medical needs under the subjective component of the deliberate-indifference standard." *Richmond*, 885 F.3d at 947.  And here, as explained immediately above, when the Court accepts Stenberg's allegations as true, it

38

concludes that he has plausibly alleged that Dr. Cooks' conduct constituted deliberate indifference.

The MDOC Defendants next argue that Stenberg "cannot show that [Dr. Cooks] violated clearly established law." (MDOC Defs.' Mot., ECF No. 84, PageID.1095.) They insist that "it is not clearly established that a prisoner has a right to perfect fitting dentures," and they say that Dr. Cooks "was not on notice that the Eighth Amendment require[d] him to continually try to find perfect dentures for [Stenberg] in perpetuity." (*Id*., PageID.1096.)

But again, the MDOC Defendants attack a claim that is far weaker than the one Stenberg has actually brought. Stenberg does not contend that he has the right to "perfect fitting dentures" or that Dr. Cooks had to work on his dentures "in perpetuity." Instead, Stenberg swears in the Verified Amended Complaint that Dr. Cooks violated his constitutional rights when Dr. Cooks (1) provided him a set of dentures that would not stay in his mouth, left him unable to eat solid food, and caused him substantial pain and then (2) said he "did not care" and refused to provide follow up care when informed about the problems. The Court has little difficulty concluding that it was clearly established that knowingly leaving a prisoner without functioning teeth – presumably rendering the prisoner unable to eat solid food or function without pain – would amount to deliberate indifference and violate that prisoner's constitutional rights.

For the reasons explained above, the Court declines to grant Dr. Cooks qualified immunity at this time. The MDOC Defendants may re-raise this argument upon a full factual record at the conclusion of discovery. The Court therefore **DENIES** the MDOC Defendants' motion to dismiss with respect to the claim against Dr. Cooks in Count I of the Verified Amended Complaint.

## C

The Court next turns to the claims in Count II of Stenberg's Verified Amended Complaint. In that Count, Stenberg alleges that he was denied medical care arising out of his elevated blood ammonia levels and enlarged spleen. (*See* Am. Compl. at ¶¶ 68-80, ECF No. 74, PageID.658-662.) This claim primarily involves an incident that occurred on August 9, 2018, while Stenberg was incarcerated at the RGC. On that day, Stenberg says that he "fell down every time he attempted to use the toilet" and that even though he repeatedly requested to see a doctor, "[n]o one ever came to help [him]." (*Id.* at ¶70, PageID.658-659.) Stenberg further alleges that after he "pass[ed] out and [fell] from his wheelchair to the floor, [h]e awoke to [Defendant] Brown kicking him in the ribs and yelling at him to get up." (*Id.* at ¶71, PageID.659.) Stenberg also says that Brown physically prevented a nurse from providing medical assistance to him while he was lying on the floor. (*See id.* at ¶72, PageID.659.) The MDOC Defendants named in this Count are the following:

40

- Jeremy/Jeb Bush.  Bush was the warden of the RGC.  Stenberg claims that Bush is "legally responsible for the operation of the [RGC] and the health and welfare of [Stenberg]." (*Id.* at ¶67(A), PageID.657.);

- Richard Neusbaum.  Neusbaum was a Health Unit Manager at the RGC.  Stenberg alleges that Neusbaum was "responsible for [his] the health and welfare." (*Id.* at ¶67(B), PageID.657).  He also says that Neusbaum was "responsible for responding to grievances and correcting problems." (*Id.*);

- Halee Jordan.  Jordan was a registered nurse at the RGC and was a "nursing supervisor." (*Id.* at ¶67(C), PageID.657.)  Stenberg says that Jordan "was responsible for [his] health and welfare." (*Id.*)  He also alleges that his sister spoke to Jordan and informed Jordan of his serious medical conditions. (*See id.* at ¶75, PageID. 660.); and

- Van Brown.  Brown was a residential care aide at the RGC.  As described above, Stenberg alleges that Brown prevented him from receiving medical care and kicked him in the ribs while he was passed out in his cell.

**1**

The MDOC Defendants argue that the claim against Defendants Bush, Neusbaum, and Brown in Count II of the Verified Amended Complaint fails because Stenberg has not adequately alleged that those Defendants were personally involved in the deprivation of his medical care.[9]  The Court agrees with respect to Defendants Bush and Neusbaum, but it disagrees with respect to Defendant Brown.

**a**

Stenberg says that Defendants Bush and Neusbaum were personally involved in the alleged denial of his medical care because they "actively participated in

---

[9] The MDOC Defendants also argue that Stenberg had failed to allege the personal involvement of Defendant Jordan.  The Court resolves Stenberg's claim against her raised in Count II of the Verified Amended Complaint in Section VII(C)(3) below.

denying" certain grievances that he filed concerning the denial of his medical care at the RGC on August 9, 2018, and the surrounding time period. (Stenberg Resp., ECF No. 95, PageID.1680.)   And he insists that because these Defendants "arbitrarily denied his requests for help" in his grievances, they "perpetuate[d the] denial of [his] medical care." (*Id.*)

The MDOC Defendants counter that Stenberg's reliance on Bush's and Neusbaum's participation in the grievance process is insufficient to state a viable claim that they were personally involved in the deprivation of medical care. (*See* MDOC Defs.' Mot., ECF No. 85, PageID.1079.)   In support of that proposition, they rely on the Sixth Circuit's decision in *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999).   In *Shehee*, the Sixth Circuit affirmed the dismissal of constitutional claims against corrections officials where the plaintiff claimed only that they had denied his administrative grievances and failed to provide a remedy for alleged retaliation that the inmate had experienced. *See id*. at 300.   The MDOC Defendants read *Shehee* as establishing that a corrections official does not personally participate in a denial of an inmate's constitutional rights where the official does no more than deny a grievance filed by the inmate.   They argue that *Shehee* is fatal to Stenberg's claims against Defendants Bush and Nussbaum because Stenberg alleges only that they denied his grievances related to his medical care.

Stenberg reads *Shehee* differently. (*See*, *e.g.*, Stenberg Supp. Brs., ECF No. 118, 119.)  He argues that *Shehee* stands only for the limited proposition that a corrections official does not personally participate in the denial of an inmate's constitutional rights where the official denies a grievance in which the inmate complains about a *completed* violation of his rights. (*See id*., citing *Calhoun v. Hill*, 2008 WL 4277171, at *7 (E.D. Mich. Sept. 17, 2008) and *Beausoleil v. Snyder,* 2021 WL 615209, at *14 (E.D. Mich. Feb. 17, 2021)).  He insists that *Shehee* leaves open the possibility that a corrections official who denies a grievance or fails to respond to an inmate's kite can be held liable under Section 1983 if (1) the grievance or kite informed the official about an ongoing violation of the inmate's constitutional rights and (2) the official, acting with a culpable state of mind, failed to take available action that could have ended the ongoing violation. (*See id*.)  Stenberg insists that his claim against Bush and Neusbaum in Count II of the Verified Amended Complaint is viable under this theory because his grievances put them on notice of an ongoing violation of his constitutional right to adequate medical care.  The Court disagrees.

Even if Stenberg has accurately stated the governing legal rule, his claims against Bush and Neusbaum still fail because he has not plausibly alleged that the grievances they denied were sufficient to put them on notice of an ongoing violation of Stenberg's right to medical treatment.  In the Verified Amended Complaint,

Stenberg identified three grievances as relevant to his claims in Count II: Grievance RGC-18-08-1591-12D1, RGC-18-08-1615-28i, and RGC-19-08-1633-28C. (*See* Am. Compl., ECF No. 74, PageID.696.) None of these grievances put Bush and Neusbaum on notice of a continuing violation of Stenberg's right to adequate medical care.

Grievance RGC-18-08-1591-12D1 raised complaints about abdominal pain Stenberg was experiencing. (*See* Grievance RGC-18-08-1591-12D1, PagteID.2313.) Stenberg does not allege that Bush had any involvement with this grievance (and the documentation related to the grievance does not indicate any connection between Bush and this grievance), and thus this grievance did not place Bush on notice of anything. And while it does appear that Neusbaum reviewed and denied the grievance at Step II of the process (*see* Grievance RGC-18-08-1591-12D1, PageID.2319), that is not enough to impose liability on Neusbaum because Stenberg's Step II appeal related to *past* alleged misconduct. Indeed, Stenberg's complaints in his Step II appeal are phrased in the past tense. For example, he said that "from 7-24-18 to 8-10-18 [he had] asked on almost a daily basis to see a doctor," "for weeks [he] was ignored," and that he "could have died" had a nurse "not called a doctor when she did." (*Id.*, PageID.2316-2318.) Stenberg's repeated use of the past tense in his Step II appeal would not have put Neusbaum on notice that there was an ongoing constitutional violation that he needed to address.

The same is true with respect to Grievance RGC-18-08-1615-28i. That grievance arose out of the August 9 incident described above when Stenberg passed out in his cell and awoke to Defendant Brown kicking him and preventing a nurse from administering medical assistance. Stenberg does not allege that Neusbaum had any involvement with this grievance (and the documentation related to the grievance does not indicate any connection between Neusbaum and this grievance), and thus Stenberg has not plausibly alleged that the grievance put Neusbaum on notice of any alleged constitutional violation. And while it does appear that Bush reviewed and denied the grievance at Step II of the process (*see* Grievance RGC-18-08-1615-28i, ECF No. 116-1, PageID.2327), that is not enough to impose liability on Bush because the grievance and Step II appeal used the past tense and related to past alleged misconduct. (*See id.*) Simply put, nothing in Stenberg's grievance or Step II appeal would have put Bush on notice of an *ongoing* constitutional violation.

Finally, neither Bush nor Neusbaum was involved in the grievance process arising out of RGC-19-08-1633-28C. (*See* RGC-19-08-1633-28C, ECF No. 116-1, PageID.2333-2337.) Thus, Stenberg has not plausibly alleged they were aware of any ongoing constitutional violations with respect to that grievance.

For all of these reasons, the Court **GRANTS** the MDOC Defendants' motion to dismiss Count II of the Verified Amended Complaint as to Defendants Bush and Neusbaum.[10]

**b**

Stenberg has sufficiently alleged Defendant Brown's personal involvement in the deprivation of his medical care. As described above, Stenberg alleges in the Verified Amended Complaint that when he passed out in his cell on August 9, 2018, he awoke to Brown "kicking him in the ribs and yelling at him to get up." (Am. Compl. at ¶71, ECF No. 74, PageID.659.) Then, when a nurse came to Stenberg's cell, Brown physically interfered with the nurse's administration of medical assistance by holding "his arm in front of [the nurse]" and preventing her from helping Stenberg to his feet. (*Id.* at ¶72, PageID.660.) That alleged conduct amounts to personal involvement in the deprivation of medical care to Stenberg.

---

[10] The MDOC Defendants have also moved to dismiss the claims brought against Defendants Bush and Neusbaum in Count II of the Verified Amended Complaint on other grounds, including on the basis that Stenberg has failed to state viable claims. (*See* MDOC Defs.' Mot., ECF No. 84.) They have also moved for summary judgment on behalf of Bush and Neusbaum on the claims in this Count. (*See* MDOC Defs.' Mot., ECF No. 85.) Because the Court is dismissing the claims in Count II against Defendants Bush and Neusbaum for the reasons explained above, it need not consider the MDOC Defendants' other arguments at this time. The Court therefore **TERMINATES** those portions of the MDOC Defendants' motions to dismiss and for summary judgment without prejudice.

The MDOC Defendants counter that the facts of this claim "more closely resemble an excessive force claim," and they insist that Stenberg has not "allege[d] Brown's involvement in [Stenberg's] medical care whatsoever." (MDOC Defs.' Mot., ECF No. 84, PageID.1080.) But whether Stenberg could have also brought an additional claim against Brown for excessive force is not now before the Court. And Stenberg has plausibly alleged that Brown interfered with his medical care. Indeed, he alleges that when Brown found him passed put on the floor of his cell, instead of ensuring that he received prompt medical attention, Brown physically assaulted him and then actively prevented a nurse from providing medical assistance to him. At this stage of the proceedings, the Court is not prepared to say that those allegations are insufficient to show Brown's personal involvement in the alleged deprivation of medical care. The Court therefore declines to dismiss Count II of the Verified Amended Complaint against Brown on the basis that Stenberg has failed to plausibly allege that Brown was personally involved in an alleged constitutional violation.

## 2

The MDOC Defendants raise several other defenses to Stenberg's claim against Brown, but none persuade the Court that Brown is entitled to dismissal of the claim and/or summary judgment at this time or on this record.

The MDOC Defendants first argue that Stenberg has failed to plausibly allege that Brown's actions constituted deliberate indifference to Stenberg's serious

medical needs. (*See* MDOC Defs.' Mot., ECF No. 84, PageID.1089-1091.) More specifically, the MDOC Defendants assert that Stenberg cannot satisfy the subjective component of a deliberate indifference claim against Brown because Stenberg has not "allege[d] sufficient facts […] to implicate Brown in a refusal to provide medical treatment to [Stenberg]." (*Id.*, PageID.1089.) The MDOC Defendants insist that "[t]he facts alleged in the complaint indicate that Brown did not ignore [Stenberg] being passed out. Instead, the complaint shows Brown eventually helped [Stenberg] into bed." (*Id.*)

But even if Brown "eventually helped Stenberg into bed," that does not immunize Brown from liability for his conduct *before* that point. And Stenberg plausibly alleges in his Verified Amended Complaint that between the time Brown discovered Stenberg passed out on the floor in his cell and Brown helped him into bed, Brown (1) physically assaulted him and (2) actively prevented a nurse from administering medical treatment to him. So while the MDOC Defendants may be correct that Stenberg does not allege that Brown "ignore[d] Stenberg being passed out," what Stenberg does allege is in some ways *more* disturbing and at the very least plausibly alleges that Brown knew that Stenberg was in urgent need of medical attention and knowingly disregarded that knowledge when he physically assaulted Stenberg and prevented a nurse from examining or treating Stenberg.

The MDOC Defendants next argue that Brown is entitled to qualified immunity. (*See id.*, PageID.1097-1098.)  They say that "it is not clearly established that a prison worker who observes a prisoner's initial symptoms (such as repeatedly passing out) is liable merely because the prisoner was later diagnosed with serious health conditions." (*Id.*, PageID.1097.)  But again, the MDOC Defendants do not wrestle with the actual allegations that Stenberg has made in the Verified Amended Complaint.   Far from alleging that Brown simply "observ[ed]" his "initial symptoms," Stenberg plausibly alleges that instead of merely observing him, Brown saw him passed out in his cell and chose to assault him and prevent a nurse from administering medical attention to him.  Because, for the reasons explained above, Brown's actions could constitute deliberate indifference to Stenberg's serious medical needs, and because "[t]he proposition that deliberate indifference to a prisoner's medical needs can amount to a constitutional violation has been well-settled since *Estelle* in 1976," Brown is not entitled to dismissal based on qualified immunity. *Richmond*, 885 F.3d at 939.

Finally, the MDOC Defendants argue that Brown is entitled to summary judgment because Stenberg did not exhaust this claim against him. (*See* MDOC Defs.' Mot., ECF No. 85, PageID.1128-1129.)  The MDOC Defendants assert that Stenberg failed to comply with the MDOC's requirement in MDOC Policy Directive 03.02.130 that he (Stenberg) attempt to resolve his dispute with Brown before filing

a grievance. (*See* Grievance RGC-19-08-1615-28i, ECF No. 116-1, PageID.2322, in which the MDOC denied Stenberg's grievance because he "failed to attempt to resolve with staff involved.")  The Court acknowledges that Stenberg did not attempt to exhaust his dispute with Brown prior to filing a grievance against him.  But, as explained above, a prisoner's failure to comply with a prison's procedural requirements may be excused where the "actions of prison officials render the administrative remedies functionally unavailable." *Himmelreich*, 766 F.3d at 577. In this case, Stenberg says that he attempted to resolve this issue with the nurses on duty the night of the incident, and the shift supervisor "told [him] to write the grievance." (Step II Grievance Appeal, ECF No. 116-1, PageID.2326.)  The MDOC Defendants have not persuaded the Court that the MDOC can both tell Stenberg to file a grievance and then reject that same grievance on procedural grounds after he follows that instruction.[11]   Thus, the Court is not prepared to say, before any

---

[11] The MDOC Defendants argue that even if Stenberg was told by the night shift to file his grievance, that did not necessarily mean that Stenberg had to file his grievance that same night. (*See* MDOC Defs.' Reply Br., ECF No. 102, PageID.2153-2156.)  They say that Stenberg could have – and should have – waited and attempted to resolve the grievance with Brown before filing it.  But whether the night shift nurses' instruction to Stenberg left open his option to wait to file his grievance is a question of fact to be explored during discovery.  Moreover, Stenberg claims that Brown was "not [a] regular on [his] ward," "left the ward [after he] regained consciousness," and did not return to the ward during the time frame when Stenberg could have attempted to resolve his grievance against him. (Grievance RGC-18-08-1591-12D1, ECF No. 116-1, PageID.2328.)   The Court is not yet prepared to rule as a matter of law that Stenberg failed to properly exhaust this claim against Brown.

discovery has taken place regarding what was said to Stenberg on the night he filed the grievance, that the grievance process was available to Stenberg under the circumstances he alleges existed here.

For all of these reasons, the Court **DENIES** the MDOC Defendants' motion to dismiss and motion for summary judgment to the extent the motions seek dismissal and/or summary judgment on Stenberg's claim against Brown in Count II of the Verified Amended Complaint.

**3**

Finally, the Court turns to the portion of Count II directed at Defendant Jordan.  The MDOC Defendants have moved for summary judgment on this claim against Jordan on the basis that Stenberg failed to exhaust his administrative remedies against her. (*See* MDOC Defs.' Mot., ECF No. 84.)  The Court agrees.

Stenberg identifies the relevant grievance involving Jordan in paragraph 78 of the Verified Amended Compliant as Grievance RGC-18-08-1591-12D1.   But Stenberg did not identify any conduct of Jordan in his Step I grievance.  Instead, he complained only about the conduct of nurses Sears and Donnelly. (*See* Grievance RGC-18-08-1591-12D1, ECF No. 116-1, PageID.2313.)  Jordan reviewed the Step I grievance and denied it. (*See id.*)  In Stenberg's Step II appeal, he did take issue with Jordan's resolution of the grievance, but he never filed a separate and independent grievance against Jordan claiming that she wrongly denied him medical

care.  Thus, he never exhausted any potential constitutional claim against her arising out of the denial of medical care.  For all of these reasons, summary judgment is **GRANTED** in favor of Defendant Jordan on Count II of the Verified Amended Complaint.[12]

## D

Next, in Count III of the Verified Amended Complaint, Stenberg alleges that certain Defendants "denied [him m]edical care and pain medication as scheduled" and "stopped administering pain medication to [him] for no just cause or reason." (Am. Compl. at ¶91, ECF No. 74, PageID.663.)  He brings this claim against the following MDOC Defendants:

- Jeb/Jeremy Bush;

- Nathan Neusbaum;

- Lori Poireir.  Poirier was a Health Unit Manager at the RGC during the relevant time, and Stenberg says that she was "responsible for the behavior of the nurse under her" and was "responsible to react to complaints against her nurses." (*Id*. at ¶91(E), PageID.664);

- Halee Jordan;

---

[12] The MDOC Defendants have also moved to dismiss the claims brought against Defendant Jordan in Count II of the Verified Amended Complaint on other grounds, including on the basis that Stenberg has failed to state viable claims against her. (*See* MDOC Defs.' Mot., ECF No. 84.)  Because the Court is granting summary judgment in favor of Jordan on the claim in Count II, it need not consider the MDOC Defendants' other arguments at this time.  The Court therefore **TERMINATES** those portions of the MDOC Defendants' motions to dismiss without prejudice.

- Dr. Jeffery Stievie.  Dr. Stieve was the "Chief Medical Officer" of the MDOC.  Stenberg says that Dr. Stieve had "the responsibility for the care of the [Stenberg] and everyone in the MDOC." (*Id.* at ¶91(I), PageID.665); and

- Richard Harbaugh.

The MDOC Defendants argue that the MDOC Defendants named in Count III are entitled to dismissal of that Count because, among other things, "there is not a single factual allegation related to acts or omissions of [those Defendants]" in that Count. (MDOC Defs.' Mot., ECF No. 84, PageID.1081.)   The Court agrees. Stenberg's allegations in Count III simply do not reference or refer to any specific conduct by Defendants Bush, Neusbaum, Poirier, Jordan, Dr. Stieve, or Harbaugh. Stenberg has therefore not sufficiently alleged that those Defendants were personally involved in the unconstitutional deprivation of medical care described in Count III of the Verified Amended Complaint.  Defendants Bush, Neusbaum, Poirier, Jordan, Dr. Stieve, and Harbaugh are therefore entitled to dismissal of Stenberg's claim brought against them in Count III.

Stenberg counters that he "alleges that each of these individuals were directly responsible for patient care and, through their lack of oversight or training, fostered a system where care providers ignored [his] need for medical treatment and pain medication." (Stenberg Resp., ECF No. 95, PageID.1681.)  But "liability cannot be imposed on a supervisor under § 1983 based on the theory of respondeat superior." *Winkler v. Madison Cty.*, 893 F.3d 877, 898 (6th Cir. 2018).  Indeed, "supervisory

liability" under Section 1983 "has sharp limits." *Crawford v. Tilly*, 15 F.4th 752, 761 (6th Cir. 2021). "It will not attach for a mere failure to act," and "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional right of another." *Id.* (internal citation omitted). "In short, a plaintiff must plausibly allege that a supervisory defendant authorized, approved, or knowingly acquiesced in the unconstitutional conduct ... of his subordinates through the execution of his job functions." *Id.* (internal citation omitted). Stenberg has not met that standard here. He has not sufficiently alleged that any of the MDOC Defendants named in Count III were "active[ly] involve[d]" in the alleged deprivation of medical care described in that Count. *Id.*

For all of these reasons, the Court **GRANTS** the MDOC Defendants' motion to dismiss Count III of the Verified Amended Complaint as to Defendants Bush, Neusbaum, Poirier, Jordan, Dr. Stieve, and Harbaugh.[13]

---

[13] The MDOC Defendants have also moved to dismiss the claims brought against the MDOC Defendant named in Count III of the Verified Amended Complaint on other grounds, including on the basis that Stenberg has failed to state viable claims. (*See* MDOC Defs.' Mot., ECF No. 84.) They have also moved for summary judgment on behalf of those MDOC Defendants named in this Count. (*See* MDOC Defs.' Mot., ECF No. 85.) Because the Court is dismissing the claims in Count III against the MDOC Defendants named in that Count for the reasons explained above, it need not consider the MDOC Defendants' other arguments at this time. The Court therefore **TERMINATES** those portions of the MDOC Defendants' motions to dismiss and for summary judgment without prejudice.

**E**

In Count IV of the Verified Amended Complaint, Stenberg alleges that "[t]he Defendants have deliberately denied [him] adequate medical care by not providing [him] with the necessary surgical procedure to correct the cataract in the [his] right eye." (Am. Compl. at ¶143, ECF No. 74, PageID.679.)  He brings this claim against, among others, Defendant DeAngelo, the warden of the WCC where Stenberg was incarcerated during the relevant time.[14] (*See id.* at ¶143(B), PageID.679.)

In their motion to dismiss, the MDOC Defendants argue, among other things, that Stenberg failed to sufficiently allege in this Count that DeAngelo was personally involved in a constitutional deprivation of medical care to Stenberg. (*See* MDOC Defs.' Mot., ECF No. 84, PageID.1081-1082.)  The Court agrees.

Stenberg references DeAngelo just once in this Count of the Verified Amended Complaint.  He claims that after he submitted a Step III grievance appeal related to his denial of his cataract surgery, he "sent [DeAngelo] a letter explaining the entire situation." (Am. Compl. at ¶156, ECF No. 74, PageID.682-683.)  But Stenberg does not allege that DeAngelo ever received the letter, what DeAngelo did or did not do after receiving the letter, or that he had any further contact with

---

[14] Stenberg also brought this claim against Defendant Bush, the warden at the RGC. (*See* Am. Compl. at ¶143(A), ECF No. 74, PageID.679.)  Stenberg has since agreed to dismiss his claims against Bush in this Court without prejudice. (*See* Stenberg Resp. to MDOC Defs.' Mot., ECF No. 95, PageID.1681.)

DeAngelo about his cataract surgery after he sent DeAngelo that letter. Nor does Stenberg allege any specifics about the letter such that the Court can reach a conclusion about what DeAngelo may have known if DeAngelo had in fact received the letter. Moreover, it appears from Stenberg's allegations that he did receive additional medical treatment for his cataracts after he wrote his letter to DeAngelo. According to Stenberg, after he wrote the letter to DeAngelo, he saw a new eye doctor, and that eye doctor attempted to prescribe Stenberg a set of contract lenses. (*Id.* at ¶157, PageID.683.) And while Stenberg claims that following that appointment, the nursing staff at the WCC took the contact lenses away and never returned them to him (*see id.* at ¶159, PageID.683), he does not allege that he ever informed DeAngelo that his contact lenses were taken from him. Simply put, Stenberg has not included enough allegations in Count IV about DeAngelo to state a viable claim that DeAngelo was personally involved in depriving him of medical care with respect to his cataracts.

For all of these reasons the Court **GRANTS** the MDOC Defendants' motion to dismiss Count IV of the Verified Amended Complaint as to Defendant DeAngelo.[15]

---

[15] The MDOC Defendants have also moved to dismiss the claims brought against Defendant DeAngelo in Count IV of the Verified Amended Complaint on other grounds, including on the basis that Stenberg has failed to state viable claims. (*See* MDOC Defs.' Mot., ECF No. 84.) They have also moved for summary judgment

**F**

In Count V of the Verified Amended Complaint, Stenberg claims that while he was incarcerated at the RGC, certain MDOC Defendants violated his Eighth Amendment rights when they "assign[ed] him an improper Prisoner Rape Elimination Act (PREA) score." (*Id.* at ¶168, PageID.685.)  He insists that by assigning him an improper PREA score, the Defendants "den[ied him] a realistic opportunity to have a prison work detail and require[ed him] to be subject to housing restrictions" while at the RGC. (*Id.*)  He brings this claim against (1) Defendant Bush, the warden at the RGC and (2) Defendant Howe, a prison counselor at the RGC. (*See id.*)

In their motion to dismiss, the MDOC Defendants argue, among other things, that Stenberg has failed to sufficiently allege that either Bush or Howe were personally involved in violating Stenberg's rights with respect to his PREA score. (*See* MDOC Defs.' Mot, ECF No. 84, PageID.1082.)  The Court agrees.

First, Stenberg does not make any specific allegations about Bush's conduct in Count V.  He does not allege that Bush had any involvement in assigning his

---

on behalf of DeAngelo on the claims in this Count. (*See* MDOC Defs.' Mot., ECF No. 85.)  Because the Court is dismissing the claims in Count IV against DeAngelo the reasons explained above, it need not consider the MDOC Defendants' other arguments at this time.  The Court therefore **TERMINATES** those portions of the MDOC Defendants' motions to dismiss and for summary judgment without prejudice.

PREA score, was aware of his PREA score, or took any action related to his PREA score. Stenberg highlights that "Defendant Bush actively participated in an arbitrary grievance process [] and through his active role in that system violated [Stenberg's] constitutional rights by labeling him a 'potential aggressor' under the Prisoner Rape Elimination Act." (Stenberg Resp., ECF No. 95, PageID.1682-83.) But there are no allegations in this Count that Bush was ever involved in the grievance process related to Stenberg's PREA score. For all of these reasons, Stenberg has not stated a viable claim against Bush in Count V of the Verified Amended Complaint.

Second, Stenberg has likewise failed to plead sufficient personal conduct by Defendant Howe in Count V. In that Count of the Verified Amended Complaint, Stenberg alleges only that (1) Howe informed him "that he had a PREA score that precluded him from being assigned to the [particular] work detail" and (2) when Stenberg asked Howe "why he had a PREA score," Howe responded that "he did not know why a PREA score had been applied to him." (Am. Compl. at ¶¶ 173-174, ECF No. 74, PageID.687.) Stenberg does not allege that Howe had any involvement in assigning him a PREA score, had any authority to change Stenberg's PREA score, or that Howe failed to take any action that could have corrected Stenberg's PREA score. Stenberg has therefore failed to plausibly allege that Howe was personally involved in any alleged violation of Stenberg's constitutional rights.

For all of these reasons the Court **GRANTS** the MDOC Defendants' motion to dismiss Count V of the Verified Amended Complaint.[16]

**G**

Finally, the MDOC Defendants seek dismissal of Count VI of the Verified Amended Complaint. (*See* MDOC Defs.' Mot., ECF No. 84, PageID.1099-1011.) In that Count, Stenberg says that the grievance process used by the MDOC at the WCC was fundamentally flawed. (*See* Am. Compl. at ¶¶ 196-199, ECF No. 74, PageID.691-693.)  He insists that "a great deal of [his] suffering could have been avoided if the MDOC would have followed the grievance procedures and investigated his complaints instead of just constantly [rejecting] them for unsupportable reasons." (*Id.* at ¶196, PageID.691.)  He therefore asks the Court to "review all of his grievances filed at WCC to determine if the court agrees with him that they were rejected without justification," and, if the Court determines that they were wrongly rejected, "issue an injunction requiring the MDOC to address how

---

[16] The MDOC Defendants have also moved to dismiss the claims brought against Defendants Bush and Howe in Count V of the Verified Amended Complaint on other grounds, including on the basis that Stenberg has failed to state viable claims. (*See* MDOC Defs.' Mot., ECF No. 84.)  They have also moved for summary judgment on behalf of Bush on the claims in this Count. (*See* MDOC Defs.' Mot., ECF No. 85.)  Because the Court is dismissing the claims in Count II against Defendants Bush and Howe for the reasons explained above, it need not consider the MDOC Defendants' other arguments at this time.  The Court therefore **TERMINATES** those portions of the MDOC Defendants' motions to dismiss and for summary judgment without prejudice.

they will correct this problem [with the grievance process]" and award Stenberg damages. (*Id.* at ¶198, PageID.692.)

The Court dismisses this claim for several reasons. First, it not clear that Stenberg has brought this claim against the proper Defendant. Stenberg has not brought this claim against the MDOC or the grievance coordinator at the MDOC. Instead, he brings the claim only against Defendant DeAngelo, the warden of the WCC during the relevant time frame. It is not clear to the Court that DeAngelo is the proper Defendant for a claim challenging the MDOC's entire grievance process *writ large*, and Stenberg has not provided any authority that DeAngelo is in fact the right Defendant. Second, and in any event, Stenberg has not persuaded the Court that the claim he brings in Count VI is even cognizable. For instance, he has not identified any authority that would provide the Court a mechanism for reviewing all of the grievances he ever filed at the WCC. Nor has he provided any authority for the proposition that if the Court determined that the grievance process was ineffective, he would be entitled to monetary damages. Simply put, Stenberg has not persuaded the Court that he may bring an independent claim that seeks monetary damages from the warden of the WCC arising out of the alleged wrongful denial of his grievances. The Court will therefore **GRANT** the MDOC Defendants' motion related to this Count.

# VIII

For all of the reasons explained above, Defendants' motions are resolved as follows:

- Herman's motion for summary judgment (ECF No. 88) is **DENIED**;

- Dr. Fuller's motion for summary judgment (ECF No. 87) is **DENIED**;

- The Corizon Defendants' motion for summary judgment (ECF No. 77) is **GRANTED** with respect to Count IV of the Verified Amended Complaint and **DENIED** in all other respects;

- The MDOC Defendants' motion for summary judgment (ECF No. 85) is **GRANTED** with respect to (1) Stenberg's claim in Count I brought against Defendants Harbaugh, Schrieber, and DeAngelo and (2) Stenberg's claim in Count II brought against Defendant Jordan. The MDOC Defendants' motion for summary judgment is **DENIED** with respect to Stenberg's claim in Count II against Defendant Brown. The MDOC Defendants' motion for summary judgment is **TERMINATED WITHOUT PREJUDICE** as moot in all other respects.

- The MDOC Defendants' motion to dismiss (ECF No. 84) is **GRANTED** with respect to (1) all claims brought against the MDOC Defendants in their official capacities; (2) Stenberg's claim in Count I against Defendant Bush; (3) Stenberg's claim in Count II against Defendants Bush and Neusbaum, (4) Stenberg's claim in Count III against Defendants Bush, Neusbaum, Poirier, Jordan, Dr. Stieve, and Harbaugh; (5) Stenberg's claim in Count IV against Defendants DeAngelo and Bush, (6) Stenberg's claim in Count V against Defendants Bush and Howe, and (7) Stenberg's claim in Count VI against Defendant DeAngelo. The MDOC Defendants' motion to dismiss is **DENIED** with respect to (1) Stenberg's claim in Count I against Defendant Dr. Cooks and (2) Stenberg's claim in Count II against Defendant Brown. The MDOC Defendants' motion to dismiss is **TERMINATED WITHOUT PREJUDICE** as moot in all other respects.

The following claims in the Verified Amended Complaint remain in this action for discovery:

- Count I: Stenberg's claim against Defendant Dr. Cooks only;

- Count II: Stenberg's claims against Defendants Brown and Corizon only; and

- Count III: Stenberg's claims against Defendant Tonia Lawson[17] and the Corizon Defendants only.

The Court will now schedule a status conference with the remaining parties to discuss the next steps in this action.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 21, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 21, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126

---

[17] Defendant Lawson has not filed a motion to dismiss and/or for summary judgment. On March 15, 2021, she filed an Answer to the Verified Amended Complaint. (*See* Ans., ECF No. 76.)