## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

EDWARD STENBERG #124629,

      Plaintiff,

v

CORIZON HEALTH, et al.,

      Defendants.

No. 4:20-cv-10674

Hon. Matthew F. Leitman
Mag. Judge Anthony P. Patti

---

Edward Albert Stenberg #124629
Plaintiff (In Pro Per)
Lakeland Correctional Facility
141 First Street
Coldwater, MI 49036

Sara E. Trudgeon (P82155)
Attorneys for MDOC Defendants
**MICHIGAN DEPARTMENT OF ATTORNEY GENERAL**
MDOC Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055

Bowman and Brooke LLP
Sunny Rehsi (P80611)
Attorneys for Defendants, CHS-TX, et.al.
101 West Big Beaver Road, Suite 1100
Troy MI 48084
(248) 205-3300
sunnyrehsi@bowmanandbrooke.com

Rhonda R. Stowers (P64083)
Attorney for Defendant Erica Herman, RN
**PLUNKETT COONEY**
111 East Court Street
Flint, MI 48502
(810) 232-5100
rstowers@plunkettcooney.com

Thomas R. Hall (P42350)
Attorney for Defendant Tonia Lawson, LPN
**HALL MATSON, PLC**
1550 Watertower Place, Ste. 200
East Lansing, MI 48823
(517) 853-2929
thall@hallmatson.law

Michael W. Stephenson (P48977)
**WILLINGHAM & COTE, PC**
Attorney for Defendant Dr. Gregory Fuller, D.O,
333 Albert Ave., Ste. 500
East Lansing, MI 48823
(517) 351-6200
Mstephenson@willinghamcote.com

---

**DEFENDANT TONIA LAWSON, LPN'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(a)**

NOW COMES Defendant Tonia Lawson, LPN, by and through her attorneys, Hall Matson Garver Thomas Law, PLC, and moves for Summary Judgment pursuant to FED. R. CIV. P. 56(a), stating as follows:

1. Plaintiff Edward Stenberg has been incarcerated with the MDOC for the past several decades. Throughout that time, he has put forth an incessant parade of claims citing "improper treatment" at the hands of prison officials and administrators.

2. Relative to this latest issue, Mr. Stenberg filed his original Complaint back on March 12, 2020. A First Amended Complaint was thereafter filed on March 3, 2021.[1]

3. As even a cursory review of these pleadings reveals, Mr. Stenberg is primarily concerned over perceived mistreatment he received in terms of the *fitting/replacement of his dentures, as well as his eyeglasses*.

4. More recently, and while still represented by counsel, Plaintiff filed a Second Amended Complaint. (See **Exhibit 1**).

5. Count III of the Second Amended Complaint alleges (in part) that while he remained at The Duane Waters Correctional Facility back in July of 2019, various members of 'the nursing staff' violated his Eighth Amendment Rights—*specifically by 'failing' to provide him with his pain medication as prescribed and/or scheduled*. (See **Exhibit 1**, Paragraphs 110-114).

HALL
MATSON
PLC

---

[1] Ironically, Plaintiff's original Complaint made no specific mention of Nurse Lawson's involvement, and otherwise misidentified her as an "RN" at the Duane Waters Facility. Meanwhile, in Plaintiff's First Amended Complaint, at Paragraph #115, he stated only that *"[Sic] RN Lawson denied the Plaintiff medical care by refusing him his pain medication for many hours after they were due."*

2

6.     As she has throughout the case, Defendant Lawson vehemently denies these claims as utterly meritless and otherwise unsupported by law.[2]

7.     As the Court is aware, this case has been highly unusual from the standpoint of procedural delays-- primarily stemming from federal bankruptcy proceedings involving the "Corizon" Defendants. This resulted in the case being stayed over a lengthy period of time, until discovery could resume.

8.     Plaintiff Stenberg was eventually deposed (via Zoom) on two successive dates (June 9, 2025 and July 30, 2025) at the Thumb Correctional Facility in Lapeer. He was represented by Attorney Michael S. Turco at the time.[3] Mr. Stenberg's testimony, in conjunction with his documented medical records, serves as the basis for Defendant's Motion for Summary Judgment.

9.     At present, the parties await further direction from this Court at a Status Conference on June 12, 2026. For his part, Plaintiff Stenberg has made no attempt to depose any of the named Defendants.

10.     Now that Plaintiff's deposition has finally been completed and his sworn testimony received, there is no prejudice whatsoever that would result from this Court's consideration of Defendant's Motion for Summary Judgment under Fed. R. Civ. P. 56(a).

*     *     *

11.     As indicated, Plaintiff's claim against Defendant Lawson is predicated under an alleged violation of federal law, specifically 42 USC Section 1983.

HALL
MATSON
PLC

---

[2] Nurse Lawson, now retired, had nearly 20 years of experience as a licensed practical nurse at the time of these events. While never deposed by Plaintiff in this case, her educational and professional credentials are above reproach.
[3] Mr. Stenberg's former counsel, Mr. Turco has since filed a Motion for Withdrawal that was granted by this Court. Mr. Stenberg continues In Pro Per, and has since been transferred to the Lakeland Correctional Facility in Coldwater, MI where he is currently housed.

12. Specifically, claims for denial of medical care by a prisoner are analyzed under the standard of '**deliberate indifference**.' *Estelle* v *Gamble*, 429 U.S. 97; 97 S. Ct. 285; 50 L.Ed.2d 251 (1976).

13. The United States Supreme Court has defined "deliberate indifference" as being more than mere negligence, but less than acting with purpose or knowledge. Instead, a prison official must have acted with a state of mind similar to recklessness. *Farmer* v *Brennan*, 511 U.S. 825, 834; 114 S. Ct. 1970; 128 L. Ed.2d 811 (1994).

14. To prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk. *Id.* at 837.

15. The conduct of Defendant Lawson did not satisfy **any** of the criteria cited above, and in no way violated any Constitutional right of Mr. Stenberg.

16. Indeed, Plaintiff's Complaint(s) have completely mischaracterized the nature and content of his encounter with Nurse Lawson (however limited) on the date in question.

17. In fact, Plaintiff's deposition testimony in conjunction with the available medical records, **shows unequivocally that he did receive his prescribed pain medications** (Oxycodone and Oxycontin) on the date in question (July 28, 2019), at the proper times and in conjunction with his overall medical condition. More on this issue appears below.

18. In short, **none** of the criteria necessary to establish liability as set forth in *Estelle*, *infra*, exist in this case. Indeed, 1) Nurse Lawson had no subjective or objective reason to suspect that Mr. Stenberg's *stated* medical needs (i.e., his longstanding complaints of being in 'severe pain') were '*emergent*' in nature-- and/or that he was at risk of imminent harm; 2) Nurse Lawson never 'refused to treat' Plaintiff, but rather provided him with his medications precisely as ordered, and in timely fashion; and 3) Nurse Lawson was at all times *responsive* to Mr. Stenberg's medical needs—

HALL
MATSON
PLC

by following the orders of the treating physician and providing his pain medications—all as part of her scheduled morning rounds through the inmate cellblocks.

19.     Defendant Lawson hereby moves for summary judgment as to Claim III of Plaintiff's Second Amended Complaint because she did not show "deliberate indifference" in her care of him, and this Motion for Summary Judgment should be granted as to this Defendant.

20.     Pursuant to Local Court Rule 7.1(d), defense counsel requested but was unable to obtain concurrence in this motion by and through his prior counsel, Attorney Michael S. Turco.

WHEREFORE, Defendant Tonia Lawson, LPN, respectfully requests that this Honorable Court grant this Motion for Summary Judgment and dismiss, with prejudice, Plaintiff's claim against her pursuant to Fed. R. Civ. P. 56(a).

Respectfully submitted,

**Hall Matson Garver Thomas Law, PLC**

Attorneys for Defendant Tonia Lawson, LPN

By: _____
Thomas R. Hall (P42350)
1550 Watertower Place, Ste 200
East Lansing, MI 48823
(517) 853-2929

Dated: May 7, 2026

HALL
MATSON
PLC

5

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

EDWARD STENBERG #124629,

     Plaintiff,

v

CORIZON HEALTH, et al.,

     Defendants.

No. 4:20-cv-10674

Hon. Matthew F. Leitman
Mag. Judge Anthony P. Patti

---

Edward Albert Stenberg #124629
Plaintiff (In Pro Per)
Lakeland Correctional Facility
141 First Street
Coldwater, MI 49036


Bowman and Brooke LLP
Sunny Rehsi (P80611)
Attorneys for Defendants, CHS-TX, et.al.
101 West Big Beaver Road, Suite 1100
Troy MI 48084
(248) 205-3300
sunnyrehsi@bowmanandbrooke.com


Thomas R. Hall (P42350)
Attorney for Defendant Tonia Lawson, LPN
**HALL MATSON, PLC**
1550 Watertower Place, Ste. 200
East Lansing, MI 48823
(517) 853-2929
thall@hallmatson.law

Sara E. Trudgeon (P82155)
Attorneys for MDOC Defendants
**MICHIGAN DEPARTMENT OF ATTORNEY GENERAL**
MDOC Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055


Rhonda R. Stowers (P64083)
Attorney for Defendant Erica Herman, RN
**PLUNKETT COONEY**
111 East Court Street
Flint, MI 48502
(810) 232-5100
rstowers@plunkettcooney.com


Michael Stephenson (P48977)
**WILLINGHAM & COTE, PC**
Attorney for Defendant Dr. Gregory Fuller, D.O,
333 Albert Ave., Ste. 500
East Lansing, MI 48823
(517) 351-6200
Mstephenson@willinghamcote.com

HALL
MATSON
PLC

---

**BRIEF IN SUPPORT OF DEFENDANT TONIA LAWSON, LPN'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FED R. CIV. P. 56(a)**

6

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................................... 7

STATEMENT OF ISSUES PRESENTED ........................................................................ 8

STATEMENT OF FACTS ................................................................................................. 9

STANDARD OF REVIEW .............................................................................................. 10

LAW AND ANALYSIS .................................................................................................... 12

    Plaintiff's allegations do not rise to a showing of deliberate indifference of serious medical needs as it pertains to Tonia Lawson, LPN ......................................................................... 12

CONCLUSION AND PRAYER FOR RELIEF ................................................................ 17

# INDEX OF AUTHORITIES

**Cases**

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ......................................... 13

*Anderson v Liberty Lobby, Inc.*, 477 U.S. 242; 106 S. Ct. 2505; 91 L. Ed.2d 202 (1986) ........... 13

*Berryman v SuperValu Holdings, Inc.*, 669 F.3d 714 (6th Cir. 2012) .............................. 13

*Celotex Corp. v Catrett*, 477 U.S. 317; 106 S. Ct. 2548; 91 L. Ed.2d 265 (1986) .............. 13

*Daniels v. Williams*, 474 U.S. 327; 106 S. Ct. 662; 88 L. Ed.2d 662 (1986) ................... 15

*Estelle v. Gamble*, 429 U.S. 97; 97 S. Ct. 285; 50 L. Ed.2d 251 (1976) ............................ 3

*Farmer v Brennan*, 511 U.S. 825; 114 S. Ct. 1970; 128 L. Ed.2d 811 (1994) ..................... 3

FED. R. CIV. P. 16(c)(2)(E) ................................................................................................ 1

FED. R. CIV. P. 56(a) ......................................................................................................... 1

*Hall v. Tyszkiewicz*, 28 Fed. Appx. 493, 495 (6th Cir. 2002) ......................................... 12

*Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008) ........................................................ 9

*Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich., 1993) ......................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, ...................................................... 10

*Romans v Michigan Dept. of Human Servs.*, 668 F.3d 826, 834 (6th Cir. 2012) ............. 9

*Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995). ................................................ 11

*Whitley v. Albers*, 475 U.S. 312, 319; 106 S. Ct. 1078; 89 L. Ed.2d 251 (1986). ............ 11

*Westlake v Lucas*, 537 F. 2d 857, fn 5 (6th Cir. 1976) .................................................... 14

**Statutes**

42 U.S.C. §1983 ............................................................................................................... 10

HALL
MATSON
PLC

## STATEMENT OF ISSUE PRESENTED

Whether Tonia Lawson, LPN is entitled to Summary Judgment on Plaintiff's Civil Rights Claims?

Defendant Lawson:  YES

Plaintiff:  NO

HALL
MATSON
PLC

## STATEMENT OF FACTS

Plaintiff Edward Stenberg is most recently an inmate at the Lakeland Correctional Facility in Branch County.  Back on March 12, 2020, he filed his initial Complaint and Jury Demand.

In it, Mr. Stenberg alleged that numerous administrators at the Michigan Department of Corrections-- as well as various members of the medical staff where he'd been housed over several decades-- acted with 'deliberate indifference' toward his serious medical needs under 42 U.S.C § 1983.

As indicated, the focus of Mr. Stenberg's complaints primarily involve his dissatisfaction with alleged procedural delays and/or purported denials *related to his dental/optical care*.  In any case, he likewise included colorable claims of being 'denied' timely receipt of prescribed pain medications, over the course of several months/years while he was at the Duane Waters Facility in Jackson.[4]  These allegations are outlined more extensively in his First and Second Amended Complaints (See **Exhibit 1**, Second Amended Complaint).

In the latest iteration of Plaintiff's Second Amended Complaint, containing Claims I-IV, **only "Claim III" is applicable to Defendant Lawson**.  According to Mr. Stenberg, back on July 19, 2019 Nurse Lawson was one of several floor nurses who failed to provide him medical care in accordance with physician orders.

Essentially, he claims that Defendant Lawson (among others) refused to administer (or perhaps *re-administer*) his opioid pain medications—Oxycodone and/or Oxycontin-- *within 1 hour of his request*.  As Plaintiff has since testified, his sole basis for this belief is that he'd been told by one or more unidentified nurses that this was supposedly required "*by policy*." (See

HALL
MATSON
PLC

---

[4] It is worthy of note that Mr. Stenberg's medical records as generated by medical personnel working for and through the MDOC, are utterly replete with references to his suspected drug seeking behavior and efforts to effectively treat it.

9

**Exhibit 1**, Paragraph 112; See also **Exhibit 2**, Plaintiff's Initial Grievance Form). This utterly nebulous and unsupported allegation, is the only one directed at Defendant Lawson.

In short, both the medication administration records from the date in question coupled with Plaintiff's own testimony, actually belie his claims—and this lawsuit should be dismissed as to Nurse Lawson outright.

## STANDARD OF REVIEW

FED. R. CIV. P. 56(a), governing summary judgment, states that upon such a motion, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

A party making or opposing a summary judgment motion, is required to support that party's assertion that a fact is disputed or undisputed by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

Once the moving party satisfies its initial burden under this rule, then the burden shifts to the non-moving party to "present sufficient evidence" in a form allowed under Rule 56(c)(1), to demonstrate the existence of a genuine dispute of material fact. *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 717 (6th Cir.2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323; 106 S. Ct. 2548; 91 L. Ed.2d 265 (1986)); *Romans v Michigan Dept. of Human Servs.*, 668 F.3d 826, 834 (6th Cir. 2012) *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249; 106 S. Ct. 2505; 91 L. Ed.2d 202 (1986).

HALL
MATSON
PLC

10

Unless the non-moving party's evidentiary showing is sufficient to demonstrate that a reasonable jury would return a verdict for the non-moving party, summary judgment is properly granted. *Berryman, supra* (citing *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009); *Harrison v. Ash,* 539 F.3d 510, 516 (6th Cir. 2008). The moving party is permitted to object "that the material cited [by the non-moving party] cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("[Rule 56] leaves no doubt about the obligation of a summary judgment opponent to make her case with a showing of facts that can be established by evidence that will be admissible at trial.. . . The party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary.").

If the non-moving party fails to demonstrate with evidence, in a form that would be admissible if presented at trial, *id.*, that a genuine dispute of material fact exists, then "the court may. . . . consider the fact undisputed for purposes of the motion," and also "grant summary judgment [in favor of the movant] if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." FED. R. CIV. P. 56(e) (2), (3); *Berryman, supra.*

"[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 321, n. 3. Moreover, a non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87; 106 S. Ct. 1348; 89 L. Ed.2d 538 (1986) (citations omitted). All justifiable inferences are drawn in the non-movant's favor. *Anderson,* 477 U.S. at 250. But only if "reasonable minds could differ as to the import of the

HALL
MATSON
PLC

11

evidence" should the moving party be denied summary judgment. *See Anderson*, 477 U.S. at 255 (emphasis added). When the record taken as a whole cannot "lead a rational trier of fact to find for the non-moving party," there "is no genuine issue for trial." *Matsushita Elec, Indus. Co.*, 475 U.S. at 586-87 (citations omitted). If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Celotex*, at 331.

## LAW AND ANALYSIS

### I. Plaintiff's allegations do not rise to a showing of deliberate indifference toward a serious medical need as it pertains to Tonia Lawson, LPN

It is well established that in order to prevail on a §1983 claim of denial of proper medical care to a prisoner, plaintiff must establish that the defendant was deliberately indifferent to a serious medical condition. The United States Supreme Court, in *Estelle v. Gamble*, 429 U.S. 97, 105-06; 97 S. Ct. 285; 50 L. Ed.2d 251 (1976), articulated the following standard:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." **Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner**. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. (Emphasis added).

This standard mandates both subjective proof that plaintiff's medical need is "serious" and objective proof that defendants were deliberately indifferent to the need. "Deliberate indifference" requires an intentional effort to deny or ignore Plaintiff's needs for medical care. *Whitley v. Albers*, 475 U.S. 312, 319; 106 S. Ct. 1078; 89 L. Ed.2d 251 (1986).

In considering whether or not this Defendant was deliberately indifferent to Plaintiff's serious medical need, it is useful to determine what does *not* constitute deliberate indifference.

HALL MATSON PLC

*Injury resulting from mere negligent conduct is insufficient to state an Eighth Amendment claim under section 1983.* Daniels v. Williams, 474 U.S. 327, 333; 106 S. Ct. 662; 88 L. Ed.2d 662 (1986). *Proof of medical malpractice is not enough to show a constitutional violation.* Mathieu v. Chun, 828 F. Supp. 495, 497 (E.D. Mich., 1993). *Deliberate indifference does not include negligence in diagnosing a medical condition.* Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995). *Disagreement with the defendants' medical judgment does not evidence deliberate indifference.* Hall v. Tyszkiewicz, 28 Fed. Appx. 493, 495 (6th Cir. 2002). These holdings reinforce the underlying principle that:

> . . . Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law. [*Westlake v. Lucas*, 537 F.2d 857, 860, fn 5 (6th Cir. 1976)].

\*       \*       \*

When one closely examines the premise behind Mr. Stenberg's claim of "deliberate indifference" in conjunction with his extensive medical records and recent testimony, the obvious flaws in his logic and the dearth of evidence to support his position, become painfully apparent.

First, by way of background, Nurse Lawson worked the 6:00 AM – 6:00 PM shift at the Duane Waters Facility. As part of this, she was a '**medication nurse**'—meaning she would begin each shift by traveling through the various inmate housing units—always accompanied by an armed corrections officer—and distribute each inmate's medications from a portable cart.

The type and dosage of each medication (including narcotic medications) was contained on the printed physician order accompanying his chart. As such, there was no discretion or circumstance under which she could 'refuse' or 'delay' delivery of medications to an inmate.

In this particular situation, retrieval of the **medication administration records** from the MDOC, shows that on July 28, 2019 Mr. Stenberg remained under physician orders to receive two (2) separate medications—Oxycodone and Oxycontin. (See **Exhibits 3 and 4**). The Oxycodone

was in the amount of 10 mg, to be distributed 4x per day.  Meanwhile, the Oxycontin was in the amount of 10 mg, to be distributed 2x per day.  Once the medication is distributed to the prisoner, the medication nurse handwrites his/her initials onto the record.

As one can readily see, Mr. Stenberg **did receive both of these medications as prescribed**—and was utterly powerless to deny it at deposition.[5]  With respect to the Oxycodone, this needed to be given 4 times per day but no less than 5 hours apart.  Mr. Stenberg did in fact receive his required dosages at 12:15 AM; 5:15 AM; 12:45 PM; and 9:45 PM.  Per this time schedule, Nurse Lawson would not even have been scheduled to provide him with his Oxycodone, at the time she saw him on rounds that morning!

Relative to the Oxycontin, a similar circumstance is true.  Per the medication administration record, Mr. Stenberg clearly received his proper prescribed dosage at both 8:00 AM and 8:00 PM.  He even admitted on cross-exam that per this charting, Nurse Lawson had done her job just as she was supposed to:

(By Mr. Hall)

**Q:  My question, sir.  Do you have any memory as we sit one way or the other as to whether my client administered the Oxycontin to you on the morning of July 28, 2019?**

**A:  Do I recall precisely 100%?  No.  But it is safe to assume that she gave it to me at 7:30 when she gave me my 8:00 medications.**

**(Dep Tr of Plaintiff Edward Stenberg, Exhibit 6, pp 49-50).**

HALL
MATSON
PLC

---

[5] Mr. Stenberg's deposition was conducted in two separate sessions on June 9, 2025 and July 30, 2025, respectively.  For the sake of brevity, relevant portions of his testimony on the issue of medication administration and his recollection of events from July 28, 2019 are included as Exhibits 5 and 6.

14

Apart from the above, both Mr. Stenberg's Grievance Form and his testimony indicate that at the time she distributed his morning meds, he indicated to Nurse Lawson that he was "feeling sick and in a great deal of pain." Even if true, **Nurse Lawson would not have been able to give him any more pain meds per the physician order—which required that doses of the Oxycodone be given at least 5 hours apart**. Rather, it would have been Nurse Lawson's responsibility to alert her supervising nurse (in this case, Nurse Stone) and document the occurrence—none of which occurred. From there, Nurse Stone could go about determining when to next administer the medication and/or take other action.

Moreover, Mr. Stenberg's Grievance Form and testimony makes repeated reference to his "calls" (actually, the act of hitting the call button in his cell) during which he purportedly claimed he was in continuing pain—and requested further pain medication that he never received—even at the times of 17:00 and 17:50.

Regardless of whether this (highly doubtful) circumstance occurred, there is absolutely no proof—from any source—**to suggest that Nurse Lawson was indeed the individual Mr. Stenberg contacted**—let alone whether she would have been present and distributing further medications to he and other inmates prior to her leaving shift at 6:00 PM.

*     *     *

Clearly, Plaintiff has provided no evidence to satisfy the ***subjective*** component that would partially establish a finding of deliberate indifference. The subjective standard established in *Estelle* requires that plaintiff provide proof ***that his medical need is serious***. *Estelle*, 429 U.S. at 106.

Here, Plaintiff has provided no such evidence that he expressed a serious medical need to Defendant Lawson. The proof he did provide, actually proves that Nurse Lawson acted properly and provided him his medication timely. (See **Exhibits 3 and 4**). Since Plaintiff is unable

HALL
MATSON
PLC

provide proof to establish satisfaction of the subjective component, summary judgement should be granted on the claim of deliberate indifference.

Even if this Court were to conclude that genuine issues of material fact existed with respect to the subjective component, Plaintiff's claim would still fail because he has provided the Court with no evidence satisfying the *objective* component. To satisfy the objective component presented in *Estelle*, Plaintiff must provide objective proof that Defendant Lawson was *deliberately indifferent* to his serious medical needs. *Estelle*, 429 U.S. at 106. There is no evidence to remotely support such a claim.

In his recent deposition, Plaintiff acknowledged that Nurse Lawson delivered his medications to him at or about the time they were due at 7:30 AM. His **pain** medications (specifically the Oxycodone) were not due at that time—**they were requested three hours later**.

At this point, Plaintiff can only rely on his self-serving statement to the effect that while in the midst of receiving his meds, he indicated to Nurse Lawson that he was "feeling sick and in pain." Even accepting this as true, Mr. Stenberg's mere statement to Nurse Lawson does not prove that his medical needs were 'serious.'

Moreover, nothing in the records reflect that Nurse Lawson acted with deliberate indifference, in light of this information. To the contrary, the record reflects that Mr. Stenberg went on receiving his customary doses of pain medication throughout the day—and did not issue a "KITE" form or any other documented communication that he felt ill to the point of needing medical treatment. In short, Plaintiff is likewise unable to satisfy the objective component proving deliberate indifference—in particular as it relates to this Defendant and the nature and timing of his only documented interaction with her.

HALL
MATSON
PLC

16

## CONCLUSION AND PRAYER FOR RELIEF

This lawsuit is completely unfounded as it relates to the role—and indeed the documented actions—of Nurse Tonia Lawson. To the contrary, Nurse Lawson dealt at all times with this inmate in a competent, compassionate, and straightforward manner.

Edward Stenberg has the luxury of denying this is true—while he stews over his resentment toward upper administration within the MDOC. The only trouble is, he has no tangible proof whatsoever that this contracted part-time nurse, did a single thing to harm him.

WHEREFORE, Defendant Tonia Lawson, LPN, respectfully requests that this Honorable Court grant Summary Judgment and dismiss, with prejudice, all counts against her.

Respectfully submitted,

**Hall Matson Garver Thomas Law, PLC**
Attorneys for Defendant, Tonia Lawson, LPN

By: 

Thomas R. Hall (P42350)
1550 Watertower Place, Suite 200
East Lansing, MI 48823
(517) 853-2929
thall@hallmatson.law

May 7, 2026

HALL
MATSON
PLC

17